### EDDIE WAYNE SHRADER *v.* STATE OF MARYLAND

[No. 408, September Term, 1969.]

*Decided July 28, 1970.*

95

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*William C. Miller* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William*

*A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Andrew L. Sonner, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

In this appeal, Eddie Wayne Shrader, appellant, contends that the evidence was legally insufficient to sustain his convictions by a jury in the Circuit Court for Montgomery County of assault with intent to murder, armed robbery and two separate kidnappings for which he received a total sentence of 25 years imprisonment. He does not contest his conviction of perverted sex practice for which he received an additional five years imprisonment.

The record indicates that on February 4, 1969, at approximately 1:45 in the afternoon Shrader and a codefendant, James Leo Taylor, gave a ride in their automobile to Stephen Lodge Cochran, a 16-year old youth who was hitchhiking from the District of Columbia to Montgomery County. Upon arriving at Cochran's destination, they refused to let him out of the car which was being driven by Shrader, and Taylor thereupon "turned around with a knife", according to Cochran who was in the back seat, "and said something to the effect, that I was going to ride along with them further." After driving north into Montgomery County for about fifteen minutes, the car was stopped and Cochran was forced, at knifepoint, to hand over all his money which turned out to be 90 cents. When they demanded that he get some more money, Cochran directed them to a friend's house "in the hopes that I would get some money and be released." Upon arrival at the friend's house, Shrader went in and got the friend while Taylor "held a carpet knife on—in my side." The friend could produce only $2 and "what was supposed to be some marijuana" which he gave to Shrader.

In an effort to sell the marijuana they then proceeded to the home of a 17-year old girl whom Cochran had recently been dating and Shrader went in and told her that Cochran wanted to see her. She came out and entered the

back seat of the car thinking Shrader and Taylor were friends of Cochran and not realizing that he was being held captive at knifepoint. When the young girl was unable to comply with the demand for $10, they drove off with Cochran and the girl still in the car. After continuing to drive north for a considerable time, they stopped at an "abandoned farm house" and Taylor forced the young lady to enter it with him while Shrader compelled Cochran to stay in the car. According to the young lady, when she resisted going into the farmhouse, "Shrader said if I kept it up, he would kill Steve. He said this either once or twice during the whole afternoon. He said he wanted to kill me too, but then, after Taylor repeated it several times, I got out of the car with him." During the twenty minutes Taylor and the girl were in the farmhouse, Shrader forced Cochran to commit an act of fellatio and immediately thereafter Shrader committed an act of sodomy upon Cochran.

Upon leaving the farmhouse, they proceeded to drive back to the girl's home and permitted her to leave the car upon her promise not to report their conduct to the police. By this time "it was dusk." When they drove off, according to Cochran, "I asked what was going to happen next, and Mr. Shrader told me to shut up and hit me with the palm of his hand" whereupon Cochran got the door of the car "part way open, and Mr. Shrader pulled me back into the car * * * by my arm and by my left thumb, which he broke." After being pulled back into the car, "I was hit several times on my head and my face * * * by Mr. Shrader with his hand, and then he turned my face up and hit my nose and broke that." Thereafter, "we drove along further, and I believe I tried to get out of the car one more time, and during this, he had been—Mr. Shrader had been telling me to take my clothes off, and after he broke my nose, he pulled my pants off, and my boots were off, and I tried to pull myself out of the car again, and he held me down on the seat and took out a different knife, a long thinner knife, and cut my throat", resulting in a four-inch incision.

In the meantime, according to Cochran, "Mr. Taylor had been saying that they should—that they should get rid of me because I was constantly opening doors and things, and it was going to get them caught * * * [a]nd said something like, 'Why don't you kill him.' " Shrader then proceeded to "cut my shirt off with his knife" and in the meantime "Mr. Taylor said that he wanted to pull off the road and stop so that he could beat me some because all he had been doing is driving. The car stopped and Mr. Taylor jumped out of the car and ran around to the other side, and Mr. Shrader said just stay where I was, and you know, not to get excited, and Mr. Taylor pulled me out of the car and hit me once, and I started to run, but trees and things got in the way, and he caught up to me, and he hit me." At this time the only clothing worn by Cochran was "a pair of socks and a medallion around my neck." When Taylor hit Cochran again, Cochran was able to escape by running to the nearest house where he was able to telephone the police.

Shrader and Taylor were apprehended several hours later and in a statement given to the police, Shrader confirmed, in all its essential elements, the testimony of both victims.

It is contended that the kidnapping convictions should be set aside because the evidence established (1) no proof of "forcible abduction" of the victims; (2) no proof of "transporting or carrying" the girl victim since Taylor, not Shrader "drove all the time"; (3) no proof of "intention to carry" the victims as required by the statute; and (4) "no proof of the common law crime of kidnapping" since the victims were not "taken out of the State or even out of Montgomery County." The statute under which Shrader was convicted (Md. Code, Art. 27, § 337) provides:

> "Every person, his counsellors, aiders or abettors, who shall be convicted of the crime of kidnapping and forcibly or fraudulently carrying or causing to be carried out of or within

this State any person, except in the case of a minor, by a parent thereof, with intent to have such person carried out of or within this State, or with the intent to have such person concealed within the State or without the State, shall be guilty of a felony and shall be sentenced to death or to the penitentiary for not more than thirty years, in the discretion of the court."

As this Court said in *Lester v. State,* 9 Md. App. 542 (1970):

"Under the common law, kidnapping is defined as the forcible abduction or carrying away of a man, woman or child from their own country into another country. Clark and Marshall, *Law of Crimes,* (6th ed.) 662; 4 Blackstone, *Commentaries* 219. Although asportation of the individual into another country is an essential ingredient of the common law crime of kidnapping, this requirement, as can be seen from the above statute, has been modified in Maryland, as is true in most states, and the crime attaches both to intrastate and interstate asportations. As indicated by the Court of Appeals of Maryland in *Midgett v. State,* 216 Md. 26, 39, this State, by statute, 'has adopted the basic common law concept that to constitute kidnapping there must be a *carrying* of the person from the place where he is seized to some other place either out of or within this State. The statute also specifies that there must be an *intent to carry* such person to such other place or, in the alternative, an *intent to conceal* such person in or out of the State.' "

Although both victims here voluntarily entered the car used in their abduction, it is apparent that they did so innocently and with no knowledge of Shrader's and Taylor's combined fraudulent intention to forcibly abduct

them for the purposes of obtaining money and satisfying their lust. It was clearly proven that Shrader and Taylor acted in concert as principals so the argument that Shrader is innocent of kidnapping the girl because Taylor drove the car is pointless. Also without merit is the contention that the victims were not carried out of the State or Montgomery County since, under the statute, the crime attaches both to intrastate and interstate asportations. There was ample evidence to support a finding that Shrader and Taylor exhibited an "intention to carry" the victims, see *Rice v. State,* 9 Md. App. 552 (1970) and that they were forcibly abducted. We think there was ample evidence to sustain Shrader's convictions of kidnapping.

Nor do we find any merit in the contention that the evidence was insufficient to satisfy his conviction of assault with intent to murder. It is conceded that a deadly weapon was directed at a vital part of Cochran's body and that "ordinarily this would infer malice." See *Smith v. State,* 6 Md. App. 114, 119. It is argued, however, "that the knife was put against Mr. Cochran's throat to restrain him from leaping from an automobile speeding at 60 miles per hour." But this contention overlooks the situation which confronted Cochran, namely, that on numerous occasions during the day appellant and Taylor had specifically stated that they intended to kill him. As described by Cochran:

> "* * * I was for some reason very scared for my life because of what seemed to me to be happening—seemed very evident to be happening, and it seemed to me from all the conversation in the whole day, that I was going to be the subject of more sexual things, and that in the morning—after I already had my nose broken and things—of course, I could go to the police. I was led to believe that I would be killed, and at the time I would have been happy just to jump out the car door and die rather than to be beaten all night and then die; that is what happened."

Intent, of course, is a subjective matter and ordinarily is not subject to proof by direct evidence but must be ascertained by rational inferences drawn from proven facts. Under all the circumstances here, we are of the opinion that there was sufficient evidence before the jury to warrant its finding that Shrader was guilty of assault with intent to murder. See *Spencer v. State,* 10 Md. App. 1.

Finally, we find no merit in the contention that there was insufficient evidence that a dangerous or deadly weapon was used in the robbery. Cochran testified on direct examination that Shrader had a knife in his hand at the time he demanded Cochran's money. On cross-examination, when asked the question: "[w]ho had the knife in his hand, or did anybody have a knife in his hand?", he replied: "I would ——I can't say for sure. It seems that Shrader did, but it isn't clear." This Court has said many times that the testimony of a victim of a crime, if believed by the trier of fact, is sufficient to sustain a conviction. *Felder v. State,* 6 Md. App. 212, 215. Any minor discrepancies or lack of positiveness in the testimony of the victim goes only to the weight of the evidence and to the credibility of the witnesses which were for the jury, as trier of the facts, to determine. *Gardner v. State,* 8 Md. App. 694, 701.

*Judgments affirmed.*