586 A.2d 746

**Terry KEARNEY**

v.

**STATE of Maryland.**

**No. 689, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 1, 1991.

248

Ilene S. Cohen, Assigned Public Defender, Annapolis (Stephen E. Harris, Public Defender, Baltimore, on the brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Attorney General, Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted Before WILNER, C.J., and ROBERT M. BELL and FISCHER, JJ.

WILNER, Chief Judge.

Appellant was convicted by a jury in the Circuit Court for Prince George's County of felony murder, assault with intent to disable, two counts of kidnapping, use of a handgun in the commission of a crime of violence, and transporting a handgun. He was sentenced to serve life imprisonment for murder, five years for assault with intent to disable, 15 years for each kidnapping, 10 years for use of a handgun in the commission of a crime of violence, and three years for transporting a handgun. All sentences were to run concurrent to the life sentence.

On appeal, appellant complains that (1) the trial court erred in consolidating for trial two separate series of offenses which occurred three days apart, (2) there was insufficient evidence to sustain his convictions, and (3) his convictions for the two handgun violations should have merged. Although we find no merit in appellant's sufficiency argument, for the most part we agree with appellant's remaining contentions.

### Facts

On January 18, 1989, appellant drove in his blue Toyota with two men, identified only as "Todd" and "Hambone", to the home of Lynel Davis. Davis, who sold crack cocaine for Todd and Hambone, owed them money for a quantity of cocaine he lost in a drug transaction. When the three men arrived at Davis's housing complex, Todd and Hambone displayed a gun and ordered Davis into appellant's car.

Appellant then drove to Cherry Hill, where Todd and Hambone left the car to retrieve some "stuff." Appellant told Davis not to leave the car. After Todd and Hambone returned, the four men went to the home of Erie Ward. Todd and Hambone claimed that Ward owed them $250 and threatened that, if Erie was not at home, they were going to beat up Davis. If Erie was at home, but did not have the money, they were "going to do him."

Davis was sent to Ward's door to see if he was at home. Davis only pretended to knock. He returned to the car and

told Todd and Hambone that Ward was not home. The four men then drove to Walker Mill Drive, where Todd and Hambone repeatedly struck Davis and left him on the road.

Three days later, on January 21, 1989, appellant, Todd, and Hambone again drove to Erie Ward's home. This time, Ward was at home and suspected that something might happen to him. Ward told his mother that he was going out with Todd, and he left her a note which read in part, "If anything happens to me Hambone & Todd were responsible. They stay in Forrestville with Linda and Brenda." Appellant, Todd, and Hambone drove Ward to the Walker Mill Drive area, where Todd and Hambone told Ward to get out of the car. After Ward pleaded that he would get them the money, Todd and Hambone shot Ward several times. They returned to the car, told appellant to drive, and threatened him and his family. Later that day, Erie Ward's body was found in the Walker Mill Drive area.

### (1) Consolidated Trial

Appellant was charged and convicted on indictment CT892484X of the kidnapping and assault of Lynel Davis on January 18. He was charged and convicted on indictment CT892483X of the felony murder, kidnapping, and handgun offenses involving Erie Ward on January 21. Appellant argues that, because the evidence necessary to convict him of the kidnapping on the 18th was not mutually admissible with the evidence necessary to convict him of the murder and kidnapping on the 21st, the offenses should have been tried separately. We agree.

Ordinarily, the matter of severance or joinder is left to the sound discretion of the trial judge. *Frazier v. State*, 318 Md. 597, 607, 569 A.2d 684 (1990); *State v. Edison*, 318 Md. 541, 546, 569 A.2d 657 (1990); *Grandison v. State*, 305 Md. 685, 705, 506 A.2d 580, *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174, *reh. denied*, 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986); *Graves v. State*, 298 Md. 542, 471 A.2d 701 (1984). Where there are multiple indictments against a single defendant, the exercise of that

discretion usually involves two determinations. First, the court must determine whether the offenses to be tried together are of the same or similar character. *See Graves,* 298 Md. at 544, 471 A.2d 701; Md.Rule 4–253(b). Second, the court then must consider the likely prejudice which would result from the joinder. As the Court of Appeals explained in *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977), joinder of similar offenses may prejudice the defendant in three respects:

"First, he may become embarrassed, or confounded in presenting separate defenses.... Secondly, the jury may cumulate the evidence of the various crimes charged and find guilt when, if the offenses are considered separately, it would not do so. At the very least, the joinder of multiple charges may produce a latent hostility, which by itself may cause prejudice to the defendant's case. *Thirdly, the jury may use the evidence of one of the crimes charged, or a connected group of them, to infer criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged.*"

*Id.* at 609, 375 A.2d 551 (emphasis added).

This third type of prejudice involves what is commonly referred to as "other crimes" evidence. *Edison,* 318 Md. at 546, 569 A.2d 657; *State v. Faulkner,* 314 Md. 630, 633, 552 A.2d 896 (1989). Because such evidence may tend to confuse jurors, predispose them to a belief in the defendant's guilt, or unfairly prejudice their minds against the defendant, evidence of a defendant's prior criminal conduct may not ordinarily be introduced to prove that he is guilty of the offense for which he is then on trial. *Faulkner,* 314 Md. at 633, 552 A.2d 896. As with many rules of evidence, however, there are exceptions. "Other crimes" evidence may be admitted if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan, identity, opportunity, preparation, or knowledge. *Id.* at 634, 552 A.2d 896; *Ross v. State,* 276 Md. 664, 669–70, 350 A.2d 680 (1976); C. McCormick, *Evidence* § 190, at 558–64

(E. Cleary 3d ed. 1984); L. McLain, *Maryland Practice: Maryland Evidence* § 404.5, at 353 (1987). The decision whether to admit "other crimes" evidence involves a three-step analysis: (1) the evidence must fit one of the above exceptions; (2) if so, the defendant's involvement in the "other crime" must be established by clear and convincing evidence; and (3) the necessity for and the probative value of the evidence must outweigh the undue prejudice likely to result from its admission. *Faulkner*, 314 Md. at 634–35, 552 A.2d 896 (quoted in *Edison*, 318 Md. at 547–48, 569 A.2d 657).

■ In the context of a joinder of offenses, "where the offenses are joined for trial because they are of a similar character, but the evidence would not be mutually admissible [because of the ban on the admission of 'other crimes' evidence], the prejudicial effect is apt to outweigh the probative value of such evidence." *McKnight*, 280 Md. at 610, 375 A.2d 551. Further, in a jury trial, "a defendant charged with similar, but unrelated offenses is *entitled* to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials." *Id.* at 612, 375 A.2d 551 (emphasis added). Indeed, where the evidence at a joint jury trial is not mutually admissible because of "other crimes" evidence, there is prejudice as a matter of law which compels separate trials. *Frazier*, 318 Md. at 608–09, 569 A.2d 684; *Graves*, 298 Md. at 545, 471 A.2d 701.

■ Here, the trial court correctly determined that the offenses were of the same or similar character. The sequence of events of January 18 mirrored those of January 21, with the exception that Lynel Davis was "merely" assaulted on the 18th, while Erie Ward was murdered on the 21st. The trial court erred, however, in determining that the "other crimes" evidence of the kidnapping on January 18 and the murder on January 21 was mutually admissible. While evidence of the kidnapping would be admissible at the trial for the murder as tending to estab-

lish appellant's intent and knowledge, the reverse is not true. Any evidence of the murder would be wholly irrelevant in a trial for kidnapping to prove any of the exceptions noted in *Ross, supra.* Therefore, because evidence of the murder would not be admissible in the trial for the kidnapping, the evidence cannot be *mutually* admissible. Thus, the joinder of the offenses for trial in this case was in error.

■ The remedy for misjoinder historically has been to vacate the judgments entered below and to remand for new—but separate—trials for each of the offenses or groups of offenses. *State v. Kramer,* 318 Md. 576, 569 A.2d 674 (1990) (evidence of motor vehicle insurance violation and manslaughter not mutually admissible; both convictions reversed); *Edison,* 318 Md. 541, 569 A.2d 657 (evidence of murder, attempted murder of another four months later, and escape two months after that not mutually admissible; all three convictions reversed); *State v. Jones,* 284 Md. 232, 395 A.2d 1182 (1979) (evidence of three robberies in two-and-one-half-hour period not mutually admissible; all three convictions reversed); *McKnight,* 280 Md. 604, 375 A.2d 551 (evidence of four unrelated robberies in a one-month period not mutually admissible; all four convictions reversed). These cases suggest that when each offense is tainted by "other crimes" evidence, new trials should be ordered for all of them. They are silent, however, as to the proper remedy where only one offense is so tainted, but the other is not.

In *Graves,* the Court of Appeals analyzed the application of the rule in *McKnight* to a court trial as opposed to a jury trial:

"We conclude that in a court trial, upon joinder of similar offenses where the evidence would not be mutually admissible at separate trials, prejudice is not assumed as a matter of law.

The question then is whether a given defendant is in fact prejudiced by the joinder. In order for a judgment to survive in the face of a similar offense joinder with

evidence not mutually admissible, we think that the record must be sufficient to show that the defendant was not in fact prejudiced by the joinder. This would not be feasible as to a jury trial. The transcript of the proceedings of a trial by jury does not show how the verdicts were reached. It does not show what evidence the jurors actually considered, what weight they gave it, how they evaluated it, what credibility they gave the witnesses. There is no way to ascertain from the record whether they cumulated the evidence of the various crimes charged to find guilt or used evidence of the various crimes to infer a criminal disposition on the part of the defendant from which they found him guilty of the other crimes charged. Their deliberations remained locked in the jury room."

*Graves*, 298 Md. at 547–48, 471 A.2d 701. The *Graves* analysis applies equally well once there has been a finding of prejudice in the misjoinder, even in a jury trial. In other words, a finding of *some* prejudice as a matter of law in a jury trial does not necessitate a finding that everything was thereby prejudiced.

Here, were we to order new trials for *both* offenses, we would end up with one trial for the kidnapping on January 18, at which evidence of the events occurring on the 21st would not be admissible, and another trial for the kidnapping and murder on January 21, at which evidence of the kidnapping on the 18th *would* be admissible. While we must order the first, we have already had the second—the trial below. In light of the fact that any retrial on the murder count would be identical in every relevant way to the trial actually conducted below, we find no error—and hence no prejudice—in the admission of the events of January 18 during appellant's trial for murder. Accordingly, we shall vacate the judgment entered on Count I of Indictment CT892484X—the kidnapping that occurred on January 18—and remand that case for a new trial. We shall, however, affirm appellant's conviction for murder.

## (2) Sufficiency of the Evidence

Appellant next argues that the evidence was insufficient to sustain his convictions for kidnapping, felony murder, and assault with intent to disable. We disagree.

In *Kramer*, the Court of Appeals explained the test for sufficiency of evidence:

"To determine the sufficiency of the evidence to sustain a conviction, we must ascertain whether the trier of fact could have found from the evidence or inferences drawable therefrom that the defendant was guilty beyond a reasonable doubt. We view the evidence and permissible inferences in the light most favorable to the prosecution."

*Id.*, 318 Md. at 592, 569 A.2d 674 and the cases cited therein.

### (a) Kidnapping of Erie Ward

The elements of kidnapping are (1) a restraint of the victim's freedom (2) against his will (3) aggravated by carrying the victim to some other place. *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982). Here, Ward's prophetic note to his mother implicating Todd and Hambone is evidence from which a reasonable jury could have inferred that Ward was in fact restrained against his will by at least Todd and Hambone. Further, appellant admitted that he drove Ward, Todd, and Hambone to the remote location where Ward was executed. Because a reasonable jury could infer from the evidence that at some point in the journey to Walker Mill Drive Ward became a non-consensual passenger in the vehicle, the elements of kidnapping have been satisfied. *See Dean v. State*, 46 Md.App. 536, 537–38, 420 A.2d 288 (1980); *Schrader v. State*, 10 Md.App. 94, 99–100, 268 A.2d 257 (1970).

### (b) Felony Murder

Appellant argues that because there was insufficient evidence to sustain his conviction for the kidnapping of Erie Ward, his conviction for felony murder arising out of the kidnapping must also fail. Because we rejected appellant's

kidnapping argument, *supra,* we reject his argument on felony murder as well.

### (c) Assault with Intent to Disable

■■■■■■ An assault with intent to disable is an intentional attempt by force to inflict injury upon the person of another (or to intentionally place another in reasonable apprehension of an immediate injury) with the intent that the victim be disabled. *See State v. Jenkins,* 307 Md. 501, 515, 515 A.2d 465 (1986). Here, Davis testified that he was ordered into appellant's car at gunpoint. He further testified that he was driven, against his will, to Cherry Hill, where appellant told him to remain in the car. After Davis had been driven to a remote location, he was ordered from the car and then beaten up. A reasonable jury could have inferred from the evidence that appellant intentionally placed Davis in apprehension of bodily injury. Accordingly, we find sufficient evidence to sustain appellant's conviction for assault with intent to disable.

### (3) Merger

Appellant and the State agree that, based upon *Hunt v. State,* 312 Md. 494, 540 A.2d 1125 (1988), the convictions for unlawfully carrying, wearing, or transporting a handgun and using a handgun in the commission of a felony or crime of violence should merge. We concur.

JUDGMENT AS TO MURDER (COUNT 1, INDICTMENT CT892483X) AFFIRMED; JUDGMENT AS TO KIDNAPPING (COUNT 1, INDICTMENT CT892484X) REVERSED AND REMANDED FOR A NEW TRIAL IN ACCORDANCE WITH THIS OPINION; SENTENCE AS TO UNLAWFUL TRANSPORTATION OF A HANDGUN (COUNT 7, INDICTMENT CT892483X) VACATED. COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–HALF BY PRINCE GEORGE'S COUNTY.