693 A.2d 49

James Tyrece BUSSIE

v.

STATE of Maryland.

No. 1107, Sept. Term, 1996.

Court of Special Appeals of Maryland.

May 1, 1997.

George Harper, Upper Marlboro, for appellant.

David J. Taube, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., Mary Ellen Barbera, Asst. Atty. Gen., Baltimore and Jack B. Johnson, State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before CATHELL, HARRELL and THIEME, JJ.

HARRELL, Judge.

James Tyrece Bussie appeals his conviction by a jury in the Circuit Court for Prince George's County of assault with intent to disable, malicious shooting, use of a handgun in a crime of violence, possession of cocaine, and possession of marijuana. Appellant was acquitted of assault with intent to avoid apprehension, attempted murder, and assault with intent to murder. On 17 June 1996, the court sentenced Mr. Bussie as follows: ten years for the assault with intent to disable charge [1]; five years without parole for the handgun violation, to be served consecutively with the assault sentence; three years, to be served concurrently with the handgun sentence, for the cocaine count; and, one year, to be served concurrently with the handgun sentence, for marijuana possession. Appellant claims that the trial court's denial of his motion [2] to sever the drug charges [3] from the assault-related charges [4] was reversible error. Alternatively, he assigns error to the failure of the trial judge to give a self-defense instruction. We shall reverse and remand the convictions on the assault charges and affirm the convictions on the drug charges.

---

**1.** The malicious shooting conviction merged into the assault conviction for sentencing purposes.

**2.** Appellant filed a motion to sever each of the charges from the others. At a hearing on the issue, appellant merely argued for severance of the assault-related charges from the drug charges.

**3.** The "drug charges" include misdemeanor counts of possession of cocaine and possession of marijuana.

**4.** The "assault charges" include assault with intent to disable, malicious shooting, use of a handgun in the commission of a crime of violence, assault with intent to avoid apprehension, attempted murder, and assault with intent to murder.

## ISSUES

Mr. Bussie presents several issues for our review. We have restructured those issues below in order to facilitate our analysis.

I. Whether the trial judge erred by failing to sever the trial of the assault charges from the trial of the drug-related charges.

II. Whether, as a matter of law, this misjoinder requires reversal of appellant's drug convictions.

III. Whether, as a matter of law, this misjoinder requires reversal of appellant's assault convictions.

IV. Whether the trial judge's refusal to give a self-defense instruction amounted to reversible error.

## FACTS

On 23 August 1995, at approximately 9 p.m., in a fast food restaurant located in Lanham, Maryland, a melee occurred that culminated in the non-fatal shooting of Joseph Bush and appellant's arrest. Mr. Bush, a sizeable man, was not an ordinary bystander. Testimony received by the trial court indicated that Mr. Bush was an active participant in, and possible instigator of, the altercation. Almost every factual issue was disputed at trial, including who owned and produced the gun employed to shoot Mr. Bush. Both appellant and Mr. Bush concede that after someone produced the handgun, they battled for control of it, and Mr. Bush was shot twice. Appellant, after the shooting, fled the scene. Mr. Bussie was arrested at a gasoline station located approximately fifty yards from the restaurant and approximately fifteen minutes after the shooting. That arrest was effected with the assistance of the restaurant's security guard. Subsequent to police apprehension, appellant was searched incident to his arrest. During that search, the police discovered small quantities of marijuana and cocaine. Apparently the drugs were not a cause of, nor an issue in, the Lanham fast food fracas.

Appellant filed a written pre-trial motion to sever the various counts without elucidating the reasons for that motion.

At a hearing on the matter, however, appellant's counsel argued that

> the drugs had nothing to do with the original altercation. There was a melee inside the restaurant ... [b]ut drugs were not the cause.... So when the jury sees a misdemeanor count of cocaine possession and a misdemeanor of marijuana possession at the tail end of this case—and felony drug counts are not part of this case, the amounts in question are so small. But when they see those two they are likely to conclude the impermissible inference that because he's guilty of one kind of crime he, therefore, is more likely to be guilty of another kind of crime. And to avoid that impermissible inference we suggest the counts be severed to avoid the prejudice to the Defendant.

In retort, the State plainly contended that the drugs were discovered incident to the arrest for assault and, therefore, the two categories of charges were sufficiently linked logically, thereby warranting joinder.

Appellant was tried on 3 April 1996. The vast majority of the evidence produced at the trial concerned the shooting and the handgun. The State also produced sufficient evidence of the drug possession charges to garner a conviction.[5] During all phases of the trial, appellant ignored the drug charges. In fact, appellant failed to proffer any theory, or evidence in support thereof, that could serve as a defense to the drug possession charges. Essentially, appellant failed to counter the State's evidence of drug possession in any way. Ultimately, appellant took the stand and admitted to having the drugs at the time of his arrest.

Both the prosecution and defense produced sufficient evidence of appellant's self-defense claim to warrant instructing

---

**5.** In fact, appellant does not argue that the evidence of the drug charges was insufficient to sustain his conviction. He, instead, solely assigns error in his drug trial to the judge's failure to sever those charges from the assault charges.

the jury in that regard.[6]  The trial judge, without explanation, failed to instruct the jury as to the law of perfect or imperfect self-defense.  Defense counsel properly excepted to that failure on the record following the jury instructions.  The jury returned its verdict, proclaiming Mr. Bussie not guilty of attempted murder and assault with intent to murder.  The judge had previously granted a motion for judgment of acquittal as to the charge of assault with intent to avoid apprehension.  Guilty verdicts were lodged on the assault with intent to disable, malicious shooting, use of a handgun in a crime of violence, and drug possession counts.  The judge then entered the aforementioned sentences.  Thereafter, Mr. Bussie filed this timely appeal.

## ANALYSIS

### Preface

As a prelude to the severance voyage the parties have devised, we first acknowledge *Wieland v. State,* 101 Md.App. 1, 8–23, 643 A.2d 446 (1994) and *Solomon v. State,* 101 Md.App. 331, 347–55, 367–79, 646 A.2d 1064 (1994), *cert. denied,* 337 Md. 90, 651 A.2d 855 (1995).  In *Wieland,* Judge Moylan imparted what was, at that time, the most detailed comparison of joinder/severance [7] law to the "other crimes" [8]

---

6.  We shall not here specify the evidence supporting appellant's self-defense claim.  The State, in its brief, admits that "Bussie was correct that, when this case was submitted to the jury, the court should have instructed about self-defense."  The State, therefore, acknowledges error.  Their appellate argument focused, instead, on the harmless nature of that error as it relates to the convictions.

7.  The principles and logical process a trial court must implement are the same whether the request before it is for joinder or severance.  These are merely two views of the same phenomenon.  *See Wieland v. State,* 101 Md.App. 1, 8–9, 643 A.2d 446 (1994).

8.  The "other crimes" rule, and some of the exceptions thereto, have been codified as Md.Rule 5–404(b).  The rule requires that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such

evidentiary rule contained in any Maryland appellate opinion. Despite the applicability of that case to the instant one, and its relative modernity, the parties failed to mention it in their briefs or at oral argument. Perhaps this omission is explainable because "other crimes" evidentiary law and joinder/severance law are not precise parallels. *See Wieland*, 101 Md.App. at 15, 643 A.2d 446.

In *Solomon*, Judge Moylan again assaulted what has become an entrenched analogy. Still, the parties attempt to persuade this Court to conduct its appellate review of the trial judge's severance analysis in lockstep with the standard for the "other crimes" evidentiary rule. Seizing the guidon from our colleague, we persevere in our quixotic crusade to disestablish this oft-repeated, yet flawed, analogy equating the "other crimes" analysis and the issue of joinder and severance.

## I.

Our consideration of severance law and "other crimes" evidentiary law shall begin and end with the first step required of the trial judge in each. Severance cases first require an assessment of the "mutual admissibility" of the evidence bearing on the elements of each crime. Alternatively, an "other crimes" analysis begins by presuming inadmissibility, subject to a number of exceptions. Both address the same substantive relevancy considerations while adhering to differing procedural progressions.

The second step in "other crimes" evidentiary analysis inquiries compels the State to show by clear and convincing evidence that the other crime, in fact, occurred. In severance/joinder cases, however, no heightened evidentiary threshold exists. The final step in each type of case is a simple, yet variable, weighing of prejudice against probative value. The

---

as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident. As discussed in this opinion, and in *Solomon v. State*, 101 Md.App. 331, 349–55, 646 A.2d 1064 (1994), the exceptions to the "other crimes" rule are not limited to the ones codified in the Maryland Rules of Procedure.

variability rests in the factors considered in the balancing test employed in each case. In a severance case, the judge should consider judicial economy and the avoidance of the inconvenience of duplicate trials. In "other crimes" determinations, judicial economy is not an issue. *See Solomon v. State,* 101 Md.App. at 347–50, 646 A.2d 1064; *Wieland,* 101 Md.App. at 16, 643 A.2d 446. In this case, we need not consider the second and third steps of either analysis. We shall conclude that, based upon this record, the State failed to negotiate the initial severance requirement of "mutual admissibility". That failure necessitates, as a matter of law, our resolution that the drug and assault charges were erroneously joined. We explain.

■ We are mindful of the discretion afforded the lower court in severance/joinder cases. Nevertheless, we shall assign error in this case, as a matter of law. Admittedly, severance and joinder are matters, at least partially, left to the discretion of the trial judge, *e.g., Frazier v. State,* 318 Md. 597, 607, 569 A.2d 684 (1990), although the extent of appellate deference to that discretion continues to erode. *See Wieland,* 101 Md.App. at 9, 10, 643 A.2d 446 (revealing that appellate courts have accorded less deference in joinder/severance issues than in other areas ordinarily left to the trial judge's discretion and have not hesitated to reverse the decisions of a trial court, demonstrating little or no deference in the process). In fact, at least in a jury trial context, the initial phase determination of "mutual admissibility" is void of any deferential treatment on appeal. That first step requires a purely legal conclusion only.

■ As an aside, we recognize that the standard applicable in the instant case differs from that germane to a bench trial. When the judge is the arbiter of fact, he or she has at least some discretion to decide the "mutual admissibility" issue. That discretion, to join multiple offenses when the evidence of each crime is not mutually admissible, however, is foreclosed when presiding at a jury trial. This judge/jury dichotomy

evolved from *Graves v. State,* 298 Md. 542, 471 A.2d 701 (1984) and *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977).

"Mutual admissibility" consists of multiple unidirectional determinations of admissibility. *See Solomon,* 101 Md.App. at 341, 646 A.2d 1064. To ascertain if evidence of each crime would be admissible in a trial for the other, the court must turn to the substantive law of evidence.[9] In joinder/severance cases, the subject matter of the separate charges against the same defendant amount, by definition, to "other crimes". *Id.* at 342, 646 A.2d 1064. Therefore, to determine admissibility, the judge has to consider under what circumstances the "other crimes" evidence for the other charges would be admitted at a trial of a single charge. *Id.* at 342, 646 A.2d 1064. It is only in this initial step, during which the trial judge divines the admissibility of the separate evidence of each crime, that the two processes overlap. Substantively, joinder/severance law only looks to evidentiary standards for the foundations of admissibility of "other crimes" evidence.

This Court has enumerated eight varieties of "other crimes" relevance that augment the well-known codified quintet of relevance foundations, i.e., motive, intent, absence of mistake, identity and common scheme. These thirteen so-called "exceptions" to the "other crimes" rule are listed in *Solomon,* 101 Md.App. at 353–55, 646 A.2d 1064, and elsewhere. *Solomon* also acknowledges that no list of relevancy foundations for "other crimes" evidence may be labeled exhaustive. *Id.* at 355, 646 A.2d 1064; *see State v. Edison,* 318 Md. 541, 547, 569 A.2d 657 (1990).

■ One of the entries on that open-ended list, of particular interest to the instant case, yields relevance "when several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other."

---

9. As was quite clearly stated, and then analyzed, in *Solomon v. State,* 101 Md.App. 331, 340–46, 646 A.2d 1064 (1994), the overlap between the "other crimes" rule of evidence and severance/joinder law is a limited, substantive one. Furthermore, there is no overlap of the differing procedural requirements placed upon the trial court in each.

*Solomon,* 101 Md.App. at 354, 646 A.2d 1064; *see Tichnell v. State,* 287 Md. 695, 712, 415 A.2d 830 (1980); *Ross v. State,* 276 Md. 664, 670, 350 A.2d 680 (1976). We shall refer to this as "same transaction" relevance. The State, at the severance hearing and in its brief, maintained that the assault and drug charges gain "mutual admissibility" from this "same transaction" relevance. We disagree.

We begin by contemplating *Tichnell, supra.* In *Tichnell,* all of the charges against the defendant arose out of a single criminal episode. The defendant stole guns after breaking into a gun store. He then killed a police officer and commandeered the officer's cruiser. In that case, the Court of Appeals decided that the "offenses consolidated for trial were closely related to each other and occurred within a fifteen minute period within a tightly confined area near [the] store." *Tichnell,* 287 Md. at 712, 415 A.2d 830. Relevancy and, therefore, "mutual admissibility" flowed from both the logical and positional links between the crimes. The Court determined that the crimes amounted to a singular criminal transaction and acknowledged that the crimes could not be fully demonstrated at independent trials. The convergence of circumstances necessary to foment "same transaction" relevancy is more expansive than mere simultaneous arrest. Concurrence of time and place is just one factor considered in determining "same transaction" relevance. Nevertheless, the State, in its brief, contends that

> [t]he charges in this case arose from an assault committed by Bussie inside a restaurant and the discovery of drugs in his possession when he was arrested for the assault moments later. *This sequence constituted a single continuous and uninterrupted criminal transaction.*

(internal citations omitted) (emphasis added). Essentially, the State perches the "mutual admissibility" of the assault and drug crimes upon "same transaction" relevance. The State's claim, that this continuity satisfies the "mutual admissibility" requirement, is misguided for two reasons.

■ First, as it did in *Wieland*, the State fails to acknowledge the effect of the factual context in which *Tichnell* was framed. *Wieland*, 101 Md.App. at 21, 643 A.2d 446. The State, yet again, has turned down a discredited avenue. The *Tichnell* Court regarded the close proximity of time and place as just one of several reasons that severance was not required. *Tichnell*, 287 Md. at 713, 415 A.2d 830; *see Wieland*, 101 Md.App. at 21, 643 A.2d 446. We continue to maintain that mere physical closeness and chronological syncopation of criminal activity are not alone sufficient to render evidence of other crimes mutually admissible based upon "same transaction" relevance. The ultimate determination is not the coincidence of time and place. Such positional considerations are only factors in the trial judge's "same transaction" decision.

Second, the State bases its positional argument upon irrelevant occurrences. We appreciate that, although the events leading to Bussie's arrest for the assault and drug charges form a continuous sequence, the State has confused which occurrences must constitute the "continuous and uninterrupted criminal transaction". In the instant case, the assault and the discovery of the drugs occurred in close physical and chronological proximity. Under the "same transaction" basis for "mutual admissibility", however, it is not the timing and location of the discovery of the crimes that is a factor. Instead, the timing and location of those acts amounting to the commission of the crimes, i.e., the actus reus, are important, but certainly not dispositive, factors.

In *Tichnell*, the crimes were *committed* in close proximity of time and space such that they became blended into one transaction. In the instant case, the assault and handgun crimes occurred only minutes before the drugs were discovered. The drug possession crimes, however, were *continuously* committed from the moment Mr. Bussie knowingly took possession of the contraband through the time of discovery. We cannot discern from this record when Mr. Bussie took possession of the drugs. Clearly, the State failed to proffer evidence that the commission of the drug crimes coincided with the commission of the assault crimes such that they were part of

the "same criminal transaction". Had the altercation at the restaurant constituted the aftermath of a drug deal gone bad, or other drug-related interaction involving appellant, the possessory crimes and the assault crimes might have amounted to components of one criminal transaction.

The State asserts that "one story" exists in this case. As the State succinctly posits in its brief, "Bussie assaulted his victim in a restaurant, fled the scene, and was arrested moments later, at which time the arresting officer discovered drugs in his possession." Under the State's interpretation, any crime discovered during Bussie's arrest may be tried along with the assault charges. Essentially, the State would have this Court decide that any crime discovered incident to an arrest becomes part of the "story", and, therefore, "mutually admissible". This is simply not an accurate representation of the "same transaction" basis for "mutual admissibility".

The State attempts, with little success, to distinguish the facts in the instant case from three cases that support Mr. Bussie's position, i.e. *State v. Edison*, 318 Md. 541, 569 A.2d 657 (1990), *Solomon v. State*, 101 Md.App. 331, 646 A.2d 1064 (1994), and *Samuels v. State*, 54 Md.App. 486, 459 A.2d 213 (1983). We shall explain these precedential joinder/severance opinions to solidify the perception of our stance.

In *Solomon*, the defendant accosted two women, attempted to steal their automobiles, ultimately consummated a carjacking, and killed the owner of the car. This Court decided that the second and third of these events would have made little sense if described separately from what preceded them. We concluded, in *Solomon*, that based upon the logical relationship between the events, their geographic proximity, and the tightness of the time period of the events, a joint trial was appropriate. In that case, however, the close relationship stemmed from the criminal activity. Each crime had relevance to the others. Each could not be proven without introducing evidence of the others. In the instant case, the correlation between the assault and drug charges is merely between the occurrence of one crime and the discovery of

another. The "story" of each category of crime, in the instant case, can be told without mention of the other.

In *Samuels,* the police arrested the defendant and discovered evidence of two discrete housebreakings and several handgun offenses. Conducting a joint trial for those offenses was determined to be erroneous. In that case, the evidence of each crime could be proven independently and each crime was not part of the same criminal transaction. The State now claims that, although the crimes in *Samuels* were discovered simultaneously, the crimes were not connected in either scheme or sequence. In that regard, the State is correct. The State fails, however, to indicate how the two categories of crimes in the instant case were related such that they could not be independently proven. We presume the State's failure to make this argument rests squarely upon its untenable nature. In fact, as in *Samuels,* the various charges in this case were not connected in any other regard than their discovery and the conjunction of arrest.

In *Edison,* the defendant committed a murder, then later tried to shoot a police officer attempting to apprehend him for the murder and, later still, escaped from detention. The Court of Appeals decided that it was improper to try all three charges in one proceeding. The State, in its brief, posits that

> [o]nce again, ... all of the crimes were distinct. Although Edison's crimes, unlike those in *Samuels,* were all connected to each other logically, they took place over an extended period of time and in multiple venues; the charges did not form a single narrative unit.

Again, the State places excessive emphasis on the time and place of the criminal activity. The State ignores the fact that the crimes in *Edison,* like those in the instant case, could be completely proven without offering proof of any of the other crimes. Furthermore, we conclude that Bussie's alleged drug-related criminal activity, like the crimes in *Edison,* may have taken place over an extended period of time. His knowing possession of the drugs occurred some time before he entered the restaurant. There is no logical connection between the

crimes and we cannot conceive how the crimes form, what the State fashions, a "single narrative unit". Simply put, concurrence of arrests does not so tightly link the crimes so as to warrant a finding of "mutual admissibility" pursuant to "same transaction" relevance.

The assault charges and the drug charges each required different evidence relating to independent "stories". Under such circumstances, the "same transaction" relevancy foundation does not apply. We cannot discern, nor does the State point us to, an alternative basis for "mutual admissibility". Therefore, we conclude that the evidence of each category of crime was probative only to demonstrate Mr. Bussie's propensity to commit the other. Because the evidence of the assault and drug charges were not "mutually admissible", as a matter of law, the trial judge committed error by failing to sever the trials. We need not proceed, therefore, with a review of the additional steps in the severance analysis.

## II.

Demonstrating error is not the only hurdle Mr. Bussie must clear. Without identifiable prejudice, we need not reverse. We approach with caution the discussion of prejudice. Our contemplation of prejudice here should not be confused with the prejudice/probative value balancing test required of the trial judge as the final step in both severance and "other crimes" cases. The trial judge, in those final stages, is charged with conducting a balancing test teeming with discretionary leeway and he or she may deny severance despite substantial prejudice to the defendant. In fact, no Maryland appellate court has ever determined that a trial judge has abused that discretion. *See Solomon*, 101 Md.App. at 348 & n. 1, 646 A.2d 1064. We, on the other hand, after divining the initial "mutual admissibility" requirement to have been unsatisfied, review to determine if the defendant was prejudiced in any way by that error.

Under certain circumstances, a finding of prejudice is mandated as a matter of law. The clearest manifestation of this phenomenon is our pronouncement in *Kearney*, 86 Md.App. at

253, 586 A.2d 746. Our statement there deserves explanation because, at least if taken at first blush, one could misconstrue *Kearney* as dictating reversal in all misjoinder cases, based upon presumptive prejudice. In *Kearney,* we stated that

> where the offenses are joined for trial because they are of similar character, but the evidence would not be mutually admissible [because of the ban on the admission of "other crimes" evidence], the prejudicial effect is apt to outweigh the probative value of such evidence. Further, in a jury trial, a defendant charged with similar, but unrelated offenses is *entitled* to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials. Indeed, where the evidence at a joint jury trial is not mutually admissible because of "other crimes" evidence, there is prejudice as a matter of law which compels separate trials.

*Kearney,* 86 Md.App. at 253, 586 A.2d 746 (internal citations and quotations omitted) (emphasis in original); *see Frazier,* 318 Md. at 608–09, 569 A.2d 684; *Graves v. State,* 298 Md. 542, 545, 471 A.2d 701 (1984); *McKnight,* 280 Md. at 610–12, 375 A.2d 551.

Nevertheless, the pronouncement of mandatory prejudice in *Kearney* extends only as far as its underlying rationale and facts will support. That foundation, consisting of *McKnight* and its references to "entitlement", concerns misjoined charges, each of which were vigorously defended. The facts of this case, however, are easily distinguished because appellant completely abdicated his defense of the drug charges and admitted to the drug crimes during trial. Despite our prior statement that prejudice is mandated, we have also consistently determined that "[t]he remedy for a misjoinder need be no broader than the harm." *Wieland,* 101 Md.App. at 19, 643 A.2d 446; *see Kearney v. State,* 86 Md.App. 247, 253–55, 586 A.2d 746, *cert. denied,* 323 Md. 34, 591 A.2d 250 (1991). If we were to follow heedlessly the verbiage of *Kearney,* we might reverse automatically all misjoinder cases, including the one at bar. Such a result would be troubling because we cannot perceive how appellant, in the instant case, was prejudiced in

his drug trial. Consequently, we shall affirm appellant's drug convictions and reverse and remand the assault-related convictions for a new trial. We explain.

The Court of Appeals has identified how misjoinder of trials may be prejudicial.[10] From these primers, we perceive four separate instances.

1. The defendant may be prevented from presenting separate, inconsistent defenses.

2. The jury may accumulate evidence of the various crimes charged. The jury may use the aggregate of evidence to find guilt when, if the offenses were considered separately, it would not do so.

3. The misjoinder may produce a latent hostility that, by itself, may cause prejudice to the defendant's case.

4. The jury may infer a criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged.

*McKnight,* 280 Md. at 609, 375 A.2d 551 (internal citations omitted), *cited in McKinney v. State,* 82 Md.App. 111, 119, 126, 570 A.2d 360, *cert. denied,* 320 Md. 222, 577 A.2d 50 (1990).

We conform to the general standard for ascertaining prejudice in any criminal trial. When reviewing an established error in search of prejudice, we must be able to determine beyond a reasonable doubt that the defendant suffered no prejudice. In a jury trial, all reasonable doubts as to the effect of the error on the verdict must be resolved in favor of the defendant. *See, e.g., Mutyambizi v. State,* 33 Md.App. 55, 363 A.2d 511 (1976); *Saunders v. State,* 28

---

**10.** More specifically, *McKnight* identified sources of prejudice for misjoined trials of *similar, yet unrelated,* crimes. We acknowledge that those possible sources of prejudice might also infect a misjoinder of dissimilar crimes. If the crimes are dissimilar because of a mutual inapplicability of certain defenses or the lack of common elements the first two of the *McKnight* prejudice sources, i.e., inability to present separate defenses and aggregation of evidence, may be rendered impotent.

Md.App. 455, 463, 346 A.2d 448 (1975). Review of each of the four types of prejudice for each category of crime must be accomplished in order to determine if prejudice resulted. If we perceive reasonable doubt as to the existence of prejudice, we must reverse.

■ For dissimilar charges, such as the assault and drug charges in this case, two of the sources of prejudice identified above, i.e., inability to present separate defenses and aggregation of evidence, will not likely affect a conviction. In this case, appellant did not identify any defense applicable to the drug charges that might be helpful for the assault charges, or vice versa. No prejudice, therefore, could result. Likewise, the evidence used to prove either group of charges is not probative of any element of the other. No aggregation of the evidence of either crime would likely be used improperly to satisfy an element of the other, thereby influencing the jury's disposition. Therefore, in this case, of those sources of prejudice identified in *McKnight*, only two remain viable for these dissimilar crimes. Those two sources are a possible latent hostility residing within the jury and a possible impermissible inference of criminal disposition stemming from the evidence of other crimes.

Mr. Bussie, in his brief, alleges that "at a separate trial for the drug charges, it is difficult to see why the facts of the assault at [the restaurant] would be admissible." We agree. Failure to sever the assault charges from the drug charges, as we have previously established, was erroneous. Nonetheless, appellant fails to ameliorate our doubt about the prejudicial effect of this misjoinder.

We first note that the State, in this case, offered overwhelming evidence of drug possession supporting those convictions. Additionally, appellant proffered no exculpatory theory, or evidence thereof. Appellant's counsel failed to mention the drug charges in his opening or closing statements. Furthermore, after the State's cross-examination of appellant concerning the drugs, appellant's counsel failed to retort with a re-direct examination on that topic. We conclude that, under

such circumstances, no prejudice resulted. Therefore, a finding of prejudice from a misjoinder is not always required as a matter of law. Under circumstances, like those tendered in the record of this case, prejudice does not result.

The evidence of appellant's control over the drugs was uncontroverted. For an accused to have "possession" of a controlled substance, he must know of its presence and its illicit nature. *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988); *see* Md.Ann.Code art. 27, § 287(a). A jury, however, may infer knowledge of possession based upon circumstantial evidence. *Dawkins, supra.* We perceive that this jury, presented as it was with evidence of the assault, may have impermissibly rushed to draw that permissible inference.

Nevertheless, we conclude, beyond a reasonable doubt, that the State produced overwhelming evidence of drug possession. Appellant offered no defense to the possession crimes. Had such a defense been mounted, or had the State's case been incomplete, prejudice may have stemmed from one of the four sources established in *McKnight.* How the jury decided the merits of that hypothetical defense, or fissure in the State's case, might have been impermissibly tainted by the misjoinder. Appellant's submissive stance on the drug charges, perhaps best demonstrated by the absence of any re-direct on the issue while appellant was on the stand, amounted to a complete abdication of his defense. In light of appellant's resignation to conviction, and the strength of the State's case, we shall not assign prejudice.

Tangentially, we recognize another potential source of prejudice. In this jury trial, Mr. Bussie's decision to take the stand to defend the assault charges could have been a source of prejudice in his drug trial. Mr. Bussie was motivated obviously to take the stand to offer evidence of his self-defense claim. He would not be compelled, and probably less inclined, to take the stand in a separate trial for the drug possession charges.

In effect, by trying the unrelated crimes together, the State garnered drug-related testimonial access to appellant. The

prosecutor secured that enigma of litigious folklore that most trial lawyers, save Perry Mason and Ben Matlock, never behold, i.e., the in-trial confession. In all misjoinders, the State may have testimonial access to a defendant when it might not otherwise.

    ■ Certainly, at a properly joined trial, a defendant may not limit the State's cross-examination to a limited number of charges. In the case of a misjoinder, however, we conclude that prejudice might stem from improper testimonial access to the defendant. We perceive that a prosecutor could couple charges so as to oblige a defendant to take the stand in order to avoid being convicted of two crimes. Such a tactic could also be used to prevent a defendant from testifying concerning one count by manipulating his or her interest in avoiding exposure to cross-examination on another. To allow such a tactic in some misjoinder cases would be fundamentally unfair.

We conclude that in order to prove prejudice, however, a criminal defendant must demonstrate that he or she had "important testimony to give on one count and a strong need to refrain from testifying on the other." *See* 22A C.J.S. *Criminal Law* § 561 n. 19; *United States v. Montes–Cardenas,* 746 F.2d 771 (11th Cir.1984); *Massachusetts v. Williams,* 18 Mass.App.Ct. 945, 467 N.E.2d 481, *cert. denied,* 393 Mass. 1103, 470 N.E.2d 798 (1984); *Missouri v. Seagraves,* 700 S.W.2d 95 (Mo.App.1985); *Ostrowski v. Wyoming,* 665 P.2d 471 (Wyo.1983). Mr. Bussie did not demonstrate a need to refrain from testifying regarding the drug counts because he mounted no defense to the State's prima facie case. In this case, Mr. Bussie took the stand during his trial in an apparent effort to describe the circumstances surrounding the assault charges. In so doing, he opened himself to examination concerning the drugs. Based upon the record in this case, we conclude that he was not prejudiced. We note that the State proffered sufficient evidence, in its case-in-chief, for the jury to find beyond a reasonable doubt that Mr. Bussie knowingly possessed cocaine and marijuana. Appellant then admitted, on the stand, to possession of cocaine and marijuana at the

time of his arrest. Mr. Bussie's admission merely augmented what was already a proven case. Although his testimony did not directly address his knowledge of the drugs, he confirmed that he had the drugs on his person at the time of his arrest.

The misjoinder of the trials, although it allowed the prosecution to question Mr. Bussie about the drugs when it otherwise might not have, absent the error regarding severance, did not result in prejudice. In other words, Mr. Bussie did have an important reason to testify regarding the assault counts but had no need to refrain from testifying as to the drugs. Absent his testimony, the State would still have garnered a conviction on the drug charges.

In light of appellant's complete surrender to the drug charges, and his mere testimonial confirmation of the overwhelming evidence of guilt already presented in the State's case-in-chief, we can find no prejudice. We decline to reverse Mr. Bussie's convictions of possession of cocaine and possession of marijuana.

### III.

Ferreting out the prejudice regarding the assault charges is elementary. One of the remaining sources of prejudice stemming from this misjoinder is the jury's predilection to employ evidence of other crimes to infer a criminal disposition. *See McKnight*, 280 Md. at 609, 375 A.2d 551. Without much cerebral exertion, we conclude that the jury could have impermissibly inferred that Mr. Bussie, a possessor of drugs, had a criminal disposition. Men like Mr. Bussie, the venire may have conjectured, are more likely to carry, and use, a handgun. This inference, if drawn, no doubt affected the credence the jury gave to Mr. Bussie's testimony and his assault defense. This reasonably possible, and we believe probable, prejudice warrants our reversal and remand for a new trial of the assault with intent to disable, malicious shooting, and use of a handgun in a crime of violence convictions.

*IV.*

Mr. Bussie also argues that the trial judge committed reversible error on the assault counts by failing to instruct the jury as to the law of self-defense. Appellant requested instructions on imperfect and perfect self-defense and objected to the trial court's failure to so instruct. The State admits appellant produced sufficient evidence of self-defense at trial to garner an instruction. The State, at least inferentially, acknowledges that, had Mr. Bussie been convicted of attempted murder or assault with intent to murder, we would be required to reverse based upon the failure of the trial court to give self-defense instructions. The State argues, however, that Mr. Bussie's self-defense claim is inapplicable to his convictions and, therefore, resulted in no prejudice.

We decide this issue, not because it is essential to our disposition of this matter, but because we seek to guide the parties and the trial court on remand. In that vein, we note that the "frequently neglected and larger truth is that the defense of self-defense applies to assaultive crimes generally. . . . the defense being applicable to common law assault and battery generally, it is by necessary implication applicable to the various forms of aggravated assault. Assault with intent to disable, under Md.Ann.Code art. 27, § 386, is obviously such an aggravated assault." *Bryant v. State,* 83 Md.App. 237, 245–46, 574 A.2d 29 (1990).

The State's claim that self-defense is inapplicable to the crime of assault with intent to disable fails to acknowledge the vacillating definition of malice and the distinction between perfect and imperfect self-defense. The "chief characteristic [of imperfect self-defense] is that it operates to negate malice, an element the State must prove to establish murder. Imperfect self-defense will not exonerate a defendant, but will only mitigate murder to voluntary manslaughter." *State v. Faulkner,* 301 Md. 482, 486, 483 A.2d 759 (1984). A criminal defendant, accused of murder-related offenses, who demonstrates mitigating imperfect self-defense, eviscerates the element of malice required for a murder

conviction. *See Richmond v. State,* 330 Md. 223, 232, 623 A.2d 630 (1993). However, "[w]ith respect to other offenses requiring proof of malice, imperfect self-defense does not negate malice because the definition of malice in those cases does not include the concept of mitigation." *Id.* at 233, 623 A.2d 630 (citing with approval *Bryant,* 83 Md.App. at 244, 574 A.2d 29). Therefore, the State is correct in its assertion that the defendant was not harmed by the failure to give an imperfect self-defense instruction for his assault-related convictions. *See Richmond,* 330 Md. at 234, 623 A.2d 630.[11] Of course, had appellant been convicted of attempted murder, the failure to issue an imperfect self-defense instruction would have amounted to reversible error.

Nevertheless, appellant requested both perfect and imperfect self-defense instructions and was denied both. True self-defense, or perfect self-defense, is a defense to the crimes charged in this case. "When the steps [the defendant] takes are reasonable, he has a complete defense to such crimes against the person as . . . assault and battery and the aggravated forms of assault and battery." *Bryant,* 83 Md.App. at 246, 574 A.2d 29. Whether appellant's actions were reasonable, in light of the threat he faced, is a question for the jury. Exculpation on the underlying crime of assault, stemming as it would from a successful perfect self-defense claim, mandates similar results for the statutory aggravated forms of assault. The failure to give a perfect self-defense instruction, assuming that the evidence supported such, resulted in prejudice and would warrant reversal. Again, we are not concerned with the

---

11. This is not to say that the same mental state that would rise to imperfect self-defense might not also negate the specific intent of the crime charged. "Certainly, if the jury in the case before us found that the defendant held a subjectively honest, albeit unreasonable, belief inconsistent with the intent to disable, that would furnish a complete defense to this specific intent crime." *Richmond,* 330 Md. 223, 234, 623 A.2d 630 (1993). Erasure of the specific intent required for conviction of the crime charged, however, has nothing to do with the mitigating factor of imperfect self-defense. That factor is inapplicable to the crimes charged in this case, and an instruction on such is not compelled.

evidence supporting the instruction adduced at trial. No part of this opinion should be misconstrued as indicating that the evidence did, in fact, warrant a self-defense instruction. The State admitted in its brief that the self-defense instruction was appropriate and perches its argument upon an alleged lack of prejudice. We are merely directing that, upon a second trial of these convictions, if the evidence again adduced warrants it, a perfect self-defense instruction would be proper.

JUDGMENTS OF CONVICTION FOR ASSAULT WITH INTENT TO DISABLE, MALICIOUS SHOOTING, AND USE OF A HANDGUN IN THE COMMISSION OF A CRIME OF VIOLENCE REVERSED AND REMANDED FOR A NEW TRIAL; JUDGMENTS OF CONVICTION FOR POSSESSION OF COCAINE AND POSSESSION OF MARIJUANA AFFIRMED; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.