ROBERT JOSEPH KATES a/k/a BOBBY KATES,
CARL JANSEN ADAMS and VINCE KRITEL
*v.* STATE OF MARYLAND

[No. 231, September Term, 1971.]

*Decided December 20, 1971.*

The cause was argued before MURPHY, C.J., and MOY-LAN and GILBERT, JJ.

*James A. Gede* for appellants.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *James H. Garmer, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellants Kates, Adams and Kritel were convicted at a joint bench trial of various bookmaking offenses in violation of Maryland Code, Article 27, Section 240. On appeal it is contended: (1) that the search warrant under which incriminating evidence was seized from the appellants was issued without probable cause; (2) that the evidence seized was inadmissible because the State failed to introduce the search warrant in evidence, and (3) that the execution of the warrant was invalid because the officers failed to give proper notice of their purpose and authority before forcibly entering the premises.

At the trial evidence was adduced showing that on November 20, 1970 at approximately 1:30 p.m. police officers armed with a search warrant for 8 Warren Lodge Court, Apartment 1-A, entered the suspected premises using a passkey supplied by the manager of the apartment house; that upon entering, the officers observed

Kates and Adams seated at a table upon which there were two telephones, numerous papers, and racing sheets; that both Kates and Adams were then talking on the telephone; that the search warrant was read to them; and that tangible evidence was there seized showing that appellants were engaged in illegal bookmaking activities. The evidence also showed that appellant Kritel entered the apartment at approximately 1:45 p.m., and that during the time the officers were in the apartment, bets were taken by the officers over the telephone.

## I

The application for the search warrant was based in part on information received by one of the police officer affiants from an unidentified confidential informant whom he described as having in the past furnished him "information concerning bookmaking and lottery violations which proved to be accurate and reliable and which led directly to the arrest and conviction in Maryland of several persons for violations of the laws regulating bookmaking and lotteries." The information furnished by the informant and set forth in the affidavit was that on November 9, 1970 Kates was operating a lottery and bookmaking office at 8 Warren Lodge Court, Apartment 1-A, Cockeysville, Maryland; that he was assisted by at least one male person unknown to the informant; that Kates and his assistant were accepting wagers via telephone number 666-1292 located in the above mentioned apartment; that Kates usually arrived at the apartment daily except Sundays at approximately 11:00 a.m. and departed at about 5:00 p.m., driving a late model Ford station wagon of designated license number; and that the apartment was regularly occupied by Vince Kritel and not Kates.

In corroboration of the information given by the informant, the four police officer affiants related in detail personal observations made by them of the movements of the appellant Kates from 208 Duke of Kent Lane, where he was known to be living with a girlfriend, Karen

Lawrence, to the suspected premises. The affiants' observations covered the period from November 11 through November 19, 1970; they showed that in the morning hours of each day, except Sunday when bookmaking activities were not conducted, Kates drove to the suspected premises, usually with an unidentified male, and left in late afternoon. The affiants related that on August 17, 1970 Baltimore County police officers had raided the premises at 208 Duke of Kent Lane where they found and seized evidence of a large scale bookmaking operation; that appellant, his girlfriend and others were there arrested and charged with illegal bookmaking activities. One of the affiants stated in the application that he knew Kates because of a previous bookmaking and lottery investigation conducted by him in 1966. The affiant related that he had arrested Kates for these offenses and that he was convicted on May 6, 1966. The affiants further stated that upon checking with the Telephone Company, they learned that two phones in the name of appellant Kritel were on the suspected premises, one being an unpublished number. The affiants stated that upon investigation they learned that the Ford automobile which the informant said Kates was driving to the suspected premises was in fact owned by him.

The affidavit concluded with a recital of the extensive investigative experience of the four officer affiants and their conclusion that in light of such experience the actions of Kates were not consistent with normal visitation and/or business but were consistent with the operation of an illegal bookmaking and/or gambling scheme upon the suspected premises.

We think the application for the search warrant in this case was a model of clarity and precision. The information received from the informer, whose reliability was established, coupled with the direct observations of the police officers corroborative of the informant's information made out a strong case of probable cause for the warrant's issuance; consequently, the introduction of

the seized evidence at the trial was proper. See *State v. Swales, Welch and Bowman,* 12 Md. App. 69; *Dawson v. State,* 11 Md. App. 694; *Iannone v. State,* 10 Md. App. 81; *Ward v. State,* 9 Md. App. 583. See also *United States v. Harris,* 403 U. S. 573.[1]

## II

The record discloses that the court read the application for the search warrant at the outset of the trial and, following colloquy with appellant's counsel respecting his objection that it failed to show probable cause, the court concluded that it did show probable cause. The incriminating items seized under the warrant were thereafter admitted in evidence. Under these circumstances, that the State did not formally offer the application for and the search warrant in evidence does not constitute reversible error. The court had these documents before it when ruling on the objection to the seized evidence and the parties treated the documents as if they were properly before the court for its consideration; consequently, we see no error in the State's failure to include the search warrant and application as a formal exhibit in the case. *Cf. Banks v. State,* 228 Md. 130.

## III

Appellants next contend that the evidence introduced at the trial below was improperly admitted since the search warrant under which it was seized was invalidly executed; that before an officer may use force to break and enter, he must first give proper notice of his purpose

---

1. In *Harris,* the defendant was convicted of possessing non-taxed liquor. He contended that the affidavit supporting the search warrant, the execution of which resulted in the discovery of illicit liquor, was insufficient to establish probable cause. In evaluating what was constitutionally necessary for a finding of probable cause, the court held that the affidavit relating observations of an unidentified informant as to respondent's illicit liquor sales both to himself and to others when coupled with the affiant's own knowledge of respondent's reputation as a trafficker of nontax paid distilled spirits, afforded sufficient basis upon which a magistrate could reasonably issue a warrant.

and authority and be denied admittance. It is undisputed that the officers entered the premises without prior demand by using a passkey obtained from the manager of the apartment complex. It is well settled that the law proscribes such unannounced searches. This rule is not, however, without qualification or exception. As noted in *Henson v. State,* 236 Md. 518, an announcement and demand are not requisite where the facts made it evident that the officers' purpose is known or where such announcement and demand would likely frustrate the search, increase the peril of the searching officers, or permit the destruction of evidence. See also *Ker v. California,* 374 U. S. 23; *Berigan v. State,* 2 Md. App. 666. We have held that narcotics cases may fall within the exception above noted "for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry." *Waugh v. State,* 3 Md. App. 379, citing *Henson v. State, supra.* We think such a rationale equally applicable in gambling and/or lottery cases. See *United States v. Tracy,* 350 F. 2d 658 (3rd Cir.).

While no evidence was adduced by the State to show that the officers, at the time of entry, knew of exigent circumstances which would permit an unannounced entry upon the suspected premises, appellants made no objection to the introduction of the seized items on this ground prior to their admission in evidence. It was not until the end of the trial that appellants raised the question for the first time and then only in support of their motion for a judgment of acquittal. Of course, the office of a motion for judgment of acquittal is essentially limited to challenging the legal sufficiency of the evidence to support a guilty verdict, *Vuitch v. State,* 10 Md. App. 389; it does not reach, and cannot serve as a substitute for a proper objection or motion to suppress evidence on the ground of its illegal seizure. Under these circumstances, the appellants waived their right to object by not objecting on this ground to the evidence at the time

it was offered. *Porter v. State,* 230 Md. 535 and cases cited at page 537.

> *Judgments affirmed; costs to*
> *be paid by appellants.*