699 A.2d 512

**James Othel WYNN**

v.

**STATE of Maryland.**

**No. 1636, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Sept. 4, 1997.

---

136

Gina M. Serra, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Emmet Davitt, Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General, Baltimore, Robert Dean, State's Attorney for Montgomery County, Rockville, on the brief), for Appellee.

Submitted before MOYLAN, SALMON and THIEME, JJ.

THIEME, Judge.

In two separate trials, appellant James Othel Wynn was convicted by a jury in the Circuit Court for Montgomery County of a total of three counts of daytime housebreaking and three counts of theft. He was sentenced to 12 years in prison and 5 years supervised probation upon release.

We summarize the facts necessary to our resolution of the issues raised on appeal.

### *First Incident of Daytime Housebreaking and Theft*

Houston Maples left his home on 3 July 1994 and returned home on 4 July 1994. While Maples was away, someone pried open the rear window of Maples's house with a shovel taken

from Maples's storage house. After entering the home, the perpetrator took a $600 camcorder, a $20 carrying case, $200 worth of jewelry, a $100 locket, a $100 pin, and a $500 antique bowl. The police recovered Maples's camcorder after executing a search warrant of appellant's home almost ten months later. The camcorder contained a tape showing appellant's son.

### Second Incident of Daytime Housebreaking and Theft

Charles Garrison left home on the Friday after 4 July 1994 and returned the following Monday. While Garrison was away, someone pried open a rear window and took from Garrison's house $40–$50 in change, a bag full of pennies, family medals, a $300 antique watch, a gym bag, and a silver frame. After executing the previously mentioned warrant of appellant's home, police recovered Garrison's gym bag and the antique watch.

### Third Incident of Daytime Housebreaking and Theft

Michael Quigley returned home from vacation on 11 July 1994 to find that his home had been burglarized. Two basement windows were open and the door from the basement had been pried open. A pair of bolt cutters that did not belong to Quigley were discovered in the basement. After breaking into Quigley's home, the perpetrator took a gold Cartier watch, an Omega scuba diving watch, a Swatch watch, an imitation Rolex watch, other watches, coins, jewelry, and a canvas Sierra bag. The Cartier watch, Omega scuba diving watch, the imitation Rolex watch, and the canvas bag were recovered from appellant's house during the execution of the warrant. Those items were returned to Quigley.

Appellant was charged in a 23–count indictment. He was tried and acquitted on counts one through four, which are unrelated to the instant appeal. In count five, appellant was charged with the daytime housebreaking of Michael Quigley's home; count six charged appellant with the theft of Quigley's property. In count seven, appellant was charged with the daytime housebreaking of the residence of Houston Maples;

count eight charged him with the theft of Maples's property. Appellant was charged with the daytime housebreaking of Charles Garrison's home in count nine and the theft of Garrison's property in count ten. Counts 11 through 23 were eventually nol prossed by the State.

Prior to trial, appellant moved to suppress the evidence seized during the execution of the search of his home. He argued that the search violated his Fourth Amendment right against unreasonable search and seizures because police entered his home without first knocking and announcing their presence. The police maintained that they entered appellant's home unannounced because they were concerned about their safety due to appellant's extensive criminal record, which included an incident in which he pulled a gun while police officers were attempting to arrest him. Additionally, the concern of the police about their safety was heightened because appellant's wife, Angela Kenyon, was also believed to be inside the home. Kenyon had had armed robbery charges in 1989 and 1990, and had an active violation of probation warrant in addition to numerous other charges and convictions. The trial court denied appellant's motion to suppress.

The defense also moved to have the Quigley, Maples, and Garrison counts tried separately. After a hearing on the matter, the trial court ruled that the charges for the thefts and daytime housebreakings of Maples's and Garrison's property were to be tried together because the homes were in the same neighborhood and the burglaries occurred over the same weekend. The charges for the daytime housebreaking and theft of Quigley's property were tried separately.

During appellant's trial for the crimes that occurred on Maples's and Garrison's property, the evidence of the housebreaking and theft of Quigley's residence was admitted as "other crimes" evidence. Similarly, during the trial for the break-in of Quigley's home, the break-ins of Maples's and Garrison's homes were admitted as "other crimes" evidence.

Appellant was convicted on all counts in both trials. For each housebreaking, he was sentenced to ten years with all

but four suspended; for each theft conviction, he was sentenced to three years, concurrent with the housebreaking sentences. His total time of incarceration was to be 12 years and he was to be placed on five years supervised probation upon release. Appellant noted a timely appeal and raises the following issues, which we have reorganized:

1. Did the trial court err in denying appellant's Motion to Sever?

2. Did the trial court err in admitting other crimes evidence at the trial for the Maples and Garrison break-ins?

3. Did the trial court err in admitting other crimes evidence at the trial for the Quigley break-in?

4. Did the trial court err in denying appellant's Motion to Suppress?

5. Did the trial court err in failing to disclose the contents of a jury note sent to the judge during deliberations?

6. Was the evidence sufficient to sustain appellant's convictions?

## I.

■ Appellant's first contention is that the trial court erred in joining the trials of the break-ins and thefts of the Garrison and Maples homes. In a jury trial, severance is "absolutely mandated, as a matter of law, when the evidence with respect to the separate charges ... would not be mutually admissible." *Solomon v. State*, 101 Md.App. 331, 340, 646 A.2d 1064 (1994). The trial judge has no discretion to join similar offenses where the evidence as to them was not mutually admissible. *Id.* (quoting *Graves v. State*, 298 Md. 542, 545–46, 471 A.2d 701 (1984)). Evidence is mutually admissible when evidence of one offense would be admissible in the trial of the other offense and *vice versa*. This usually involves admissibility under the "other crimes" exception. The admissibility of "other crimes" evidence is governed by Maryland Rule 5–404(b). That rule reads as follows:

**(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

We summarized this area of the law in *Kearney v. State,* 86 Md.App. 247, 253, 586 A.2d 746 (1991). In that case, we stated:

> [I]n a jury trial, "a defendant charged with similar, but unrelated offenses is *entitled* to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials." Indeed, where the evidence at a joint jury trial is not mutually admissible because of "other crimes" evidence, there is prejudice as a matter of law which compels separate trials. (Citation omitted; emphasis in original.)

*Kearney,* 86 Md.App. at 253, 586 A.2d 746. The rationale for severance of trials unless the evidence is mutually admissible was explained by the Court of Appeals in *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977). In that case, the Court explained that joinder of similar offenses may prejudice the defendant in three respects:

> First, he may become embarrassed, or confounded in presenting separate defenses.... Secondly, the jury may cumulate the evidence of the various crimes charged and find guilt when, if the offenses were considered separately, it would not do so. At the very least, the joinder of multiple charges may produce a latent hostility, which by itself may cause prejudice to the defendant's case. Thirdly, the jury may use the evidence of one of the crimes charged, or a connected group of them, to infer criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged.

*Id.* at 609, 375 A.2d 551.

As Judge Moylan reminded us in *Solomon,* however, "the *procedural* aspects of severance/joinder law do not sub-

sume the *procedural* aspects of 'other crimes' evidence law, for the two settings are, procedurally, totally dissimilar." *Solomon*, 101 Md. App. at 342, 646 A.2d 1064. When analyzing whether evidence at a joint jury trial would be mutually admissible, therefore allowing the joinder of the trials, the first step is the "purely substantive determination of whether evidence of another crime is *prima facie* admissible, singly or mutually, by virtue of its utility to prove motive, intent, absence of mistake, identity, common scheme or plan, etc." *Id.* at 343, 646 A.2d 1064. There is a presumption that the evidence should be excluded; in effect, it is fair to say that all relevant "other crimes" evidence stays out unless it is substantially relevant to show something other than criminal propensity. *See Harris v. State*, 324 Md. 490, 500–501, 597 A.2d 956 (1991). The second step is a permissible weighing of the undue prejudice against the defendant with the interests of judicial economy. *Id.* at 345–47, 646 A.2d 1064.

Thus, we move to a determination of whether, in the instant case, the evidence concerning the housebreaking and theft of Garrison's and Maples's property were mutually admissible. In essence, whether the evidence of the crimes joined together in a single trial in the instant case would have been admissible if the two cases were tried separately. As the Court of Appeals pointed out in *Harris* and Judge Moylan reemphasized in *Solomon*, other crimes evidence is not confined to a finite list. *Harris*, 324 Md. at 497, 597 A.2d 956; *Solomon*, 101 Md.App. at 353, 646 A.2d 1064.

In the instant case, the only reasons given by the lower court in joining the charges in a single trial was that the homes were in the same neighborhood and the incidents occurred over the same weekend. The trial court abused its discretion when it joined the trials based solely on proximity in time and location. "Mere proximity in time and location within which several offenses may be committed does not necessarily make one offense intertwine with the others." *State v. Jones*, 284 Md. 232, 243, 395 A.2d 1182 (1979); *see also Bussie v. State*, 115 Md.App. 324, 335, 693 A.2d 49 (1997).

The State argues, however, that the trial court was right for the wrong reason. It argues that evidence of each of the individual burglaries referred to above would be mutually admissible at separate trials to show a common scheme or plan. In the alternative, the State argues that the evidence would be mutually admissible because of the identity exception. We disagree with both of the State's contentions.

■ "To establish the existence of a common scheme or plan, it is necessary to prove that the various acts constituting the offenses naturally relate to one another by time, location, circumstances and parties so as to give rise to the conclusion that they are several stages of a continuing transaction." *Jones,* 284 Md. at 243, 395 A.2d 1182. The Court of Appeals has stated that,

> [a]s a general rule, in order to gain the admission of evidence of other criminal acts under the common scheme or plan exception it is necessary that the crimes, including the crime charged, so relate to each other that proof of one tends to establish the other. Moreover, there must be "not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" The concurrence of common features under this exception, however, must be more than simply a manner of operation, which is possessed to some extent by most criminal recidivists. A method of operation is not, by itself, a common scheme, but merely a repetitive pattern.

*Cross v. State,* 282 Md. 468, 475–76, 386 A.2d 757 (1978) (internal citations omitted) (emphasis in original).

In the case *sub judice,* the State relies on the following evidence in support of its claim that the break-ins and thefts were part of a common scheme or plan: (1) the two burglaries occurred in the same neighborhood on the same weekend; (2) both homes were entered through a rear window that was pried open; (3) neither of the homes was ransacked during the burglary; and (4) most importantly, according to the State,

property taken from both residences was later recovered from Wynn's apartment when police executed a search warrant. Despite the State's efforts, we are not persuaded that the break-ins and thefts from the homes of Garrison and Maples were part of a common scheme or plan.

As we pointed out earlier, the proximity of time and location does not necessarily make one offense intertwine with the others. *Jones,* 284 Md. at 243, 395 A.2d 1182. There must be additional factors, the sum of which indicates a common scheme or plan. Thus, the first piece of evidence advanced by the State as indicative of common scheme and plan is, standing alone, unavailing. The second and third pieces of evidence advanced by the State as suggestive of a common scheme or plan are nothing more than a manner of operation, which is possessed to some extent by most criminal recidivists. *See Cross,* 282 Md. at 475, 386 A.2d 757. This is not a common scheme or plan. We do not believe that it is such a "concurrence of common features" that the thief pried open a rear window and did not ransack the homes. As to the former, it seems that this method of entry would be favored by most petty thieves that desired entry into a home and hardly such a common feature that all acts are naturally explained together. As to the latter, the same reasoning applies: we do not believe that homes are ransacked so consistently when burglarized that the failure to do so suggests a common scheme or plan. The fourth proposition offered by the State, that property taken from both residences was later recovered from Wynn's apartment when police executed a search warrant (which the State considers to be most important), is also unavailing. The fact that the offenses were committed by the same person does not qualify them to be admitted under the exception. *Jones,* 284 Md. at 243, 395 A.2d 1182. Additionally, even when considering the sum of all four pieces of evidence together, they still do not indicate a common scheme or plan. We are simply unconvinced that the similarities present common features so that the various acts are naturally to be explained as caused by a general plan.

■ The State's argument that the "other crimes" evidence is admissible under the identity exception can be quickly dispensed. In order for this exception to be applicable, the other crimes must be "so nearly identical in method as to earmark them as the handiwork of the accused." *State v. Faulkner*, 314 Md. 630, 638, 552 A.2d 896 (1989). For the reasons mentioned above, the method of breaking into the rear of a house with an available tool is hardly so unique as to indicate the perpetrator of the crime.

Thus, *for the purposes of joinder/severance law,* the Maples and Garrison offenses were not mutually admissible. The trial court erred in joining the trials of the daytime housebreakings and thefts of the Maples and Garrison homes. Accordingly, we remand so that the cases can be tried separately.

## II.

■ In light of our response to the first issue raised by appellant, we do not reach the issue of whether the trial court erred by admitting other crimes evidence at the joined trial of the housebreaking and thefts of the Garrison and Maples homes. We point out, however, that because the other crimes evidence was not mutually admissible for purposes of joinder of trials, it does not necessarily follow that the other crimes evidence is automatically inadmissible when cases are tried separately. This is the point Judge Moylan made in *Solomon,* 101 Md.App. at 335–47, 646 A.2d 1064: the test for whether "other crimes" evidence is admissible is different for joinder/severance law and evidence law.

■ The test concerning admissibility for evidence law is as follows: (1) the trial judge determines whether evidence of another crime is *prima facie* admissible, singly or mutually, by virtue of its utility to prove motive, intent, absence of mistake, identity, common scheme or plan, etc., *id.,* 101 Md.App. at 343, 646 A.2d 1064; (2) the trial judge decides whether the accused's involvement is established by clear and convincing evidence, *id.;* (3) the trial judge "assess[es] the 'necessity for

and probative value of the other crimes evidence' and then 'carefully weigh[s][it] against any undue prejudice likely to result from its admission.'" *Id.* at 345, 646 A.2d 1064 (quoting *Faulkner,* 314 Md. at 635, 552 A.2d 896).

### III.

■■■ Appellant next asserts that the trial court erred in admitting evidence of the Garrison and Maples break-ins and thefts as "other crimes" evidence in the trial for the break-in and theft of the Quigley home. The trial court admitted the evidence of the Garrison and Maples break-ins and thefts under the absence of mistake exception.

■■■ Whether to admit "other crimes" evidence is a legal "call" as to which the trial judge is either right or wrong. *Emory v. State,* 101 Md.App. 585, 604, 647 A.2d 1243 (1994). We extend no deference to a trial judge's decision to admit "other crimes" evidence. *Id.* "The starting proposition with respect to 'other crimes' evidence is that it should be excluded." *Emory,* 101 Md.App. at 601, 647 A.2d 1243. In *Emory,* Judge Moylan stated:

> Notwithstanding the presumptive exclusion of "other crimes" evidence, such evidence may be admitted, subject to clearing two additional hurdles, if it is "substantially relevant to prove some contested issue" in the case.
>
> * * *
>
> That initial hurdle, let it be carefully noted, is not simply that the "other crimes" evidence be technically or minimally relevant to some formal issue in the case other than criminal propensity, but further 1) that the relevance be *substantial* and further still 2) that it be with respect to a *genuinely contested issue* in the case.

*Emory,* 101 Md.App. at 602, 647 A.2d 1243 (emphasis in original).

The evidence in the instant case was substantially relevant to a genuinely contested matter in the case. The issue at trial

was whether appellant stole the merchandise from the victim's house. He claimed to have come to possess the merchandise by purchasing it at a flea market. Thus, not only was the issue substantially relevant and contested, it was a central issue of the case. From the determination of the theft issue, the housebreaking issue was decided. If appellant had the stolen items, it can be inferred that he was the person that broke into the house. *See Grant v. State*, 318 Md. 672, 680, 569 A.2d 1237 (1990). Thus, the issue was critical to the determination of both counts.

Lynn McLain, *Maryland Evidence* § 404.12, at 368 (1987), discusses the absence of mistake exception:

> If the defendant admits that he or she took an action, but claims to have done so unintentionally or by mistake, so that allegations of, for example, forgery, fraud, embezzlement, or malice are unfounded, the prosecution may offer evidence of his or her similar prior wrongs, acts, or crimes. This use of the evidence as proof of absence of mistake is merely the obverse of proof of intent.

> Similarly, the defendant may claim the harm he or she is alleged to have caused was not at his or her hands, but was the result of an independent accident. Evidence of prior similar acts is then admissible to show lack of mistake or accident. For example, if a defendant charged with child abuse contends that the child's injuries were caused by an accidental fall, evidence of prior beatings of the child by the defendant will be admissible. (footnotes omitted).

In *Emory, supra,* we held that "other crimes" evidence relating to various narcotics-related activities engaged in by defendants prior to commencement of the time period charged in the indictment was not admissible in a drug conspiracy prosecution for the purpose of showing absence of mistake or accident, since that was not at issue in the latter case; the defendants never argued that their apparent involvement with marijuana was somehow an inadvertent or bizarre mistake, and thus there was no claim, proffer, or theory of mistake that needed to be negated. *Id.* at 608–09, 647 A.2d 1243.

In the trial in the instant case, appellant argued that he came into possession of that stolen merchandise by mistake; he claimed to have innocently purchased it at a flea market. Carvelas Sellers, a defense witness, testified that she saw appellant at a flea market with several bags of merchandise. Furthermore, appellant extensively questioned Garrison and Maples as to whether the items taken from their houses were unique or simply mass produced. Finally, during closing arguments, appellant argued that he innocently purchased at a flea market the items that were seized from his house. Because appellant argued a defense of mistake or accident, evidence of prior similar acts was admissible to show lack of mistake or accident.

■■ Appellant, however, levels another assertion of error against the "other crimes" evidence in this case. He claims that the State did not satisfy the second prong of the three-prong test that the trial judge undertakes when deciding whether to admit "other crimes" evidence because the evidence was not clear and convincing that the other crimes had ever occurred. Judge Moylan discussed this issue in *Emory:*

When it comes to appellate review, however, the question becomes that of whether the State met its *prima facie* burden of production with respect to the other crimes. A reviewing court looks only at the legal question of whether there was some competent evidence which, if believed, could persuade the fact finder as to the existence of the fact in issue. Evidence which is legally sufficient to persuade one fact finder to the bare preponderance level is, *ipso facto,* legally sufficient to persuade a second fact finder to the clear and convincing level and yet a third fact finder to the beyond-a reasonable-doubt level. The questions of whether and of the degree to which legally sufficient evidence actually persuades is idiosyncratic with the fact finder. Because the weighing of evidence is the exclusive prerogative of the fact finder and does not impact on the purely legal question of whether some competent evidence is present to support a finding, evidence that is legally sufficient to satisfy one burden of persuasion is legally sufficient to satisfy any

burden of persuasion. This is the "clearly erroneous" standard of appellate review. It was explicitly spelled out by *State v. Faulkner*, 314 Md. at 635, 552 A.2d 896:....

*Emory*, 101 Md.App. at 622, 647 A.2d 1243.

*Vogel v. State*, 315 Md. 458, 554 A.2d 1231 (1989), makes it clear that a trial judge, in that ancillary fact-finding capacity, is not required to spread upon the face of the record the burden of persuasion he employs on this issue when he determines to admit "other crimes" evidence. In the absence of indications to the contrary, it is presumed that the judge knew the applicable law and followed it.

*Emory*, 101 Md.App. at 623–24, 647 A.2d 1243.

On only one occasion have the appellate courts of this state ever reversed the admission of "other crimes" evidence on the ground that the evidence was not legally sufficient to permit a finding that the other crimes had ever occurred;....

101 Md.App. at 623, 647 A.2d 1243.

In the instant case, Michael Quigley, the victim of the "other crime," testified that when he returned from vacation, his home had been burglarized. The investigating police officer testified that the house was entered through a rear window. Quigley identified some of the items recovered at appellant's house as the items stolen from the Quigley home. We see no reason that the testimony was insufficient to persuade the trial judge clearly and convincingly that the "other crime" occurred.

█ Leaving no stones unturned, appellant finally contends that the trial court erred in weighing the probative value of the evidence against the undue prejudice to him. In *Faulkner*, 314 Md. at 635, 552 A.2d 896, the Court of Appeals described this third step:

The necessity for and probative value of the "other crimes" evidence is to be carefully weighed against any undue prejudice likely to result from its admission. This segment

of the analysis implicates the exercise of the trial court's discretion. (Citations omitted.)

In *Emory*, 101 Md.App. at 624, 647 A.2d 1243, we described the abuse of discretion test as "a highly deferential standard of appellate review." In the instant case, there was great probative value of the evidence but the prejudice to the appellant was also great. The evidence was probative because it was necessary to defeat appellant's claim that he innocently obtained the items. Having items from three homes that were recently broken into is significantly more probative than possessing some items from the theft of a single home. On the other hand, the evidence was prejudicial because there was the chance that the jury might cumulate the evidence of the various crimes charged and find guilt when, if the offenses were considered separately, it would not do so. Also, the jury could use the evidence of one of the crimes charged, or a connected group of them, to infer criminal disposition on the part of the defendant, from which he could also be found guilty of other crimes charged.

In deciding this difficult matter, we will defer to the wisdom of the trial judge. "The weighing of a strong need against a heavy prejudice would be one of those close calls where an appellate court would be extremely loathe to second-guess the decision of the trial judge, whichever way [he] went." *Emory*, 101 Md.App. at 625, 647 A.2d 1243. Accordingly, we affirm the decision of the trial court to admit the evidence of the Garrison and Maple break-in and theft as "other crimes" evidence in the Garrison and Quigley case.

## *IV.*

Appellant's fourth assertion of error is that the trial court erred in denying his Motion to Suppress. In 1766, during the debates in Parliament on the legality of general warrants, the Roman maxim *nemo de domo sua extrahi debet* was brilliantly interpreted by William Pitt in his immortal statement:

The poorest man may, in his cottage, bid defiance to all forces of the Crown. It may be frail; its roof may shake;

the wind may blow through it; the storm may enter; the rain may enter; but the King of England may not enter; all his force dare not cross the threshold of the ruined tenement.

The next issue before the court is whether, like the King of England, the police must knock before entering. We will address the issue despite our remand on the first issue in the interest of judicial economy. *See generally* Maryland Rule 8–131. If we did not discuss the issue, there is a likelihood that the case would be remanded and retried and this same issue would be raised on appeal of the remanded case.

*-background-*

■ In *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), officers, having neither a search nor arrest warrant, went to arrest Miller. When the officers knocked at Miller's door, he asked, "Who's there?" The officers responded, "Police." Miller opened the door slightly, but did not remove the chain. Upon seeing the officers, Miller tried to close the door. The officers then forced entry, arrested him, and searched his apartment. Marked money was recovered. *Id.* at 303–304, 78 S.Ct. at 1192–93. Miller argued that while 18 U.S.C. § 3109 [1] sets forth the proper

---

1. The statutory standard that governs the agents' conduct in these cases is contained in 18 U.S.C. § 3109, which codifies the knock and announce procedure. Section 3109 provides:

 The officer may break open any outer or inner door or window or a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant.

 18 U.S.C. § 3109.

 "Compliance with § 3109 may be excused only when exigent circumstances exist." *United States v. Maden,* 64 F.3d 1505, 1508 (10th Cir.1995) (quoting *United States v. Knapp,* 1 F.3d 1026, 1030 (10th Cir.1993).) "The term 'exigent circumstances,' in conjunction with the entry of a residence during the execution of a search warrant, refers to those situations where 'the officers believe there is an emergency situation and ... their belief is objectively reasonable.'" *United States v. Stewart,* 867 F.2d 581, 584 (10th Cir.1989) (quoting *United States v. Spinelli,* 848 F.2d 26, 29 (2d Cir.1988)).

method of entry under a search warrant, it should also apply to a case involving an arrest warrant. *Id.* at 306, 78 S.Ct. at 1194. The Supreme Court agreed that § 3109 applied to Miller's case. *Id.* at 309, 78 S.Ct. at 1195–96. Justice Brennan, writing for the majority, held that at common law, an announcement of both lawful authority and purpose was required before the police could break and enter a home. *Id.* at 307, 78 S.Ct. at 1194–95. Justice Brennan noted that there were exceptions to this knock and announce rule, *id.* at 309, 78 S.Ct. at 1195–96, but rejected, as factually unsupported, the government's argument that the officers were excused from the requirement because they were virtually certain that Miller already knew their purpose so that an announcement would have been a useless gesture. *Id.* at 310, 78 S.Ct. at 1196.

Although *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is popularly recognized as setting forth the "fruit of the poison tree" doctrine, it also interpreted 18 U.S.C. § 3109. In *Wong,* an officer posed as a customer to gain entry to a laundry. A man later identified as James Toy opened the door and told the officer the laundry was not yet open and to return later. As Toy started to close the door, an officer took out his badge and identified himself. Toy slammed the door shut and ran down a hallway which led from the shop to his living quarters. Officers broke open the door, pursued, and arrested Toy. A search of his living quarters uncovered no contraband. Toy subsequently made incriminating statements about Wong Sun, who was later arrested for violations of the federal narcotics laws. *Wong Sun,* 371 U.S. at 473–75, 83 S.Ct. at 409–11. Justice Brennan, writing for the majority, stated:

> We noted in . . . [*Miller v. United States* ] that the lawfulness of an officer's entry to arrest without a warrant "must be tested by criteria identical with those embodied in 18 U.S.C. § 3109, which deals with entry to execute a search warrant."

*Id.* at 482, 83 S.Ct. at 414 (quoting *Miller,* 357 U.S. at 306, 78 S.Ct. at 1194). The Supreme Court held that the flight of the

defendant did not justify the unannounced police entry, nor did it create probable cause to arrest or search the defendant. *Wong Sun,* 371 U.S. at 482–83, 83 S.Ct. at 414–15. Although the officer identified himself, his misrepresentation failed to comply with his duty to knock and announce. *Id.* at 482–84, 83 S.Ct. at 414–16. The majority opinion suggested that there might be some common-law exceptions to the "knock and announce rule," including "imminent destruction of evidence or to rescue a victim in danger." *Id.* at 484, 83 S.Ct. at 415.

The following year, the Supreme Court decided *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), which involved the warrantless arrest of George and Diane Ker for possession of marijuana. After observing what was believed to be a drug transaction, officers entered the Kers' apartment with a passkey. After entry, one of the officers identified himself and met George and Diane Ker as they were emerging from the kitchen. The officer observed marijuana sitting on a scale in the kitchen. *Ker,* 374 U.S. at 28–29, 83 S.Ct. at 1627–28. At trial, officers testified that, based on their experience, suspects would flush narcotics down toilets or dispose of drugs in some manner prior to the entrance of the officers. *Id.* at 28 n. 3, 83 S.Ct. at 1627 n. 3.

Justice Clark, writing for one of two four-Justice pluralities, held that under the Fourth Amendment the officers failure to knock and announce prior to entry was justified by exigent circumstances; specifically, to prevent the destruction of contraband. *Id.* at 25, 40, 83 S.Ct. at 1625, 1633. Justice Harlan concurred, but on Fourteenth Amendment grounds. *Id.* at 44–46, 83 S.Ct. at 1635–36. Justice Brennan, writing for the other four-Justice plurality, held that any exceptions to the knock and announce rule were inapplicable and that the arrest was therefore illegal. *Id.* at 61–64, 83 S.Ct. at 1643–45.

Although the divided Court agreed that certain exceptions to the knock-and-announce rule existed, the Court could not agree upon the formulation and application of those exceptions. Eight justices agreed that the failure to knock and announce was acceptable only in certain circumstances and

that these circumstances should be judged based upon the reasonableness clause of the Fourth Amendment.

More recently, in *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court confronted the constitutionality of the knock and announce principle under the Fourth Amendment. Sharlene Wilson made a series of narcotics sales to a police informant. The day before police executed a warrant on petitioner's premises, Wilson waved a gun in the informer's face and threatened to kill her if she was a police informant. The Arkansas police obtained warrants to search Wilson's home and to arrest her. After arriving to execute the warrants, the police found the main door open and observed a man sitting on the living room sofa. They identified themselves as police officers as they were opening the unlocked screen door. Wilson was in the bathroom, flushing marijuana down the toilet. Wilson was convicted on possession with intent to distribute drug charges. *Id.* at 929–30, 115 S.Ct. at 1915–16.

Prior to trial, Wilson had moved to suppress the evidence seized during the search because of the officers failure to knock and announce their identity prior to entering her residence. The trial court denied her suppression motion and the Arkansas Supreme Court affirmed the conviction. *Id.* at 930, 115 S.Ct. at 1916. The Supreme Court granted certiorari in order to resolve whether or not the knock and announce principle was part of the Fourth Amendment's reasonableness inquiry. *Wilson v. Arkansas*, 513 U.S. 1014, 115 S.Ct. 571, 130 L.Ed.2d 488 (1994).

The government argued that a prior announcement would have placed the police executing the warrant in peril, given their knowledge that petitioner had threatened a government informant with a semiautomatic weapon and that the person with whom petitioner shared the house had previously been convicted of arson and firebombing. *Wilson*, 514 U.S. at 937, 115 S.Ct. at 1919. The Supreme Court, in a unanimous decision written by Justice Thomas, held that the Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock and announce

their identity and purpose before attempting forcible entry.[2] *Id.* at 934, 115 S.Ct. at 1918. The Supreme Court acknowledged, however, that countervailing law enforcement interests—including, *e.g.*, the threat of physical harm to the police, an officer's fresh pursuit of a recently escaped arrestee, and the existence of reason to believe that evidence would likely be destroyed if advance notice was given—may establish the reasonableness of an unannounced entry. *Id.* at 934–36, 115 S.Ct. at 1918–19. Thus, the Supreme Court held "that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of unannounced entry." *Id.* at 936, 115 S.Ct. at 1919.

The Court acknowledged that "[t]hese considerations[3] may well provide the necessary justification for the unannounced entry," but "[b]ecause the Arkansas Supreme Court did not address their sufficiency . . . we remand to allow the state court to make necessary findings of fact and to make the determination of reasonableness in the first instance." *Id.* at 937, 115 S.Ct. at 1919. The Supreme Court left to the lower courts the task of determining such relevant countervailing factors without a clear legal framework to decipher the boundaries of a "reasonable search." *Ibid.* The lower courts are given the task of reconciling competing policy goals of effective law enforcement and protection of individual liberty. *Id.* at 936, 115 S.Ct. at 1918–19.

---

2. For an exhaustive review of the common law history of the knock and announce rule in England and colonial America, see Historical Studies, Johns Hopkins University, *The History and Development of the Fourth Amendment to the United States Constitution*, Vol. 55 (1937).

3. The considerations advanced by Arkansas were physical harm to the officers and destruction of evidence. With regard to the consideration of physical harm to police officers, the Court stated that

prior announcement would have placed [the police] in peril, given their knowledge that the petitioner had threatened a government informant with a semiautomatic weapon and that [petitioner's roommate] had previously been convicted of arson and firebombing. *Wilson*, 514 U.S. at 937, 115 S.Ct. at 1915.

The Supreme Court revisited the issue of no-knock warrants in *Richards v. Wisconsin,* —— U.S. ——, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). In *Richards,* the police obtained a warrant to search Richards's hotel room for drugs and related paraphernalia. The police requested a warrant that would have given authorization for a "no knock" entry; the magistrate, however, explicitly deleted that portion from the warrant. *Id.* at ——, 117 S.Ct. at 1418.[4]

An officer knocked on Richards's door and announced that he was a maintenance man. Richards cracked the door, with the chain still on, saw the uniformed men, and slammed the door. The officers kicked and rammed the door and caught Richards as he was attempting to escape through a window. The police found cocaine in plastic bags above the bathroom ceiling tiles. The trial court denied Richards's motion to suppress the evidence, emphasizing that the easily disposable nature of the drugs the police were searching for further justified their decision to identify themselves as they crossed the threshold instead of announcing their presence before seeking entry. The Wisconsin Supreme Court, in affirming the trial court, concluded that police officers are never required to knock and announce their presence when executing a search warrant in a felony drug investigation. Wisconsin's high court concluded that nothing in *Wilson* prohibited an application of a *per se* exception to the knock and announce rule in cases involving drugs. *Id.* at —— – ——, 117 S.Ct. at 1419–20.

Justice Stevens, writing for the Supreme Court, rejected the use of a *per se* exception to the knock and announce requirement for felony drug investigations but nevertheless agreed

> with the trial court ... that the circumstances in this case show that the officers had a reasonable suspicion that

---

4. In the case *sub judice,* the issue of the search warrant's lack of judicial authorization and a factual basis for unannounced entry by the police upon the appellant's premises is not before this Court.

Richards might destroy evidence if given further opportunity to do so.

The judge who heard testimony at Richards' suppression hearing concluded that it was reasonable for the officers executing the warrant to believe that Richards knew, after opening the door to his hotel room the first time, that the men seeking entry to his room were the police. App. 54. Once the officers reasonably believed that Richards knew who they were, the court concluded, it was reasonable for them to force entry immediately given the disposable nature of the drugs. (Footnotes and citations omitted.)

*Id.* at ——, 117 S.Ct. at 1422.

The Supreme Court summarized by saying that

[i]n order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. Cf. *Maryland v. Buie,* 494 U.S. 325, 337 [110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276] (1990) (allowing a protective sweep of a house during an arrest where the officers have "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"); *Terry v. Ohio,* 392 U.S. 1, 30 [88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889] (1968) (requiring a reasonable and articulable suspicion of danger to justify a pat-down search). This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Richards,* —— U.S. at —— — ——, 117 S.Ct. at 1421–22.

Prior to the Supreme Court's 1995 decision in *Wilson v. Arkansas,* and its 1997 decision in *Richards v. Wisconsin,*

Maryland Courts had held that announcement and demand for admittance are not a requisite to execution of a search warrant when facts make it evident that the officers' purpose is known or when announcement and demand would frustrate the arrest, increase the peril of the arresting officer, or permit destruction of evidence. *See Henson v. State,* 236 Md. 518, 204 A.2d 516 (1964); *Kates v. State,* 13 Md.App. 688, 284 A.2d 651 (1971); *Waugh v. State,* 3 Md.App. 379, 239 A.2d 596 (1968) *(per curiam );* In *Henson,* the appellant claimed that the police officers' conduct in breaking open his door without first announcing who they were and making demand that entry be granted was illegal and vitiated all the evidence that followed. *Id.* at 520, 204 A.2d 516. The Court of Appeals, in upholding the validity of the search and seizure, undertook a review of Maryland common law in this area. The Court concluded:

> The claim that the evidence seized was inadmissible because the police officers executing the search warrant did not advise those within that they had such a warrant and demand admittance, but broke in forcibly without notice, is an extension of the old rule that a peace officer seeking to arrest an individual who is in a house, either by authority of an arrest warrant or under circumstances making a warrant unnecessary, must give proper notice of his purpose and authority and be denied admittance before he can use force to break and enter. . . .
>
> * * *
>
> However, the rule has often been made subject to qualifications and exceptions even in states with statutes, so that by judicial decision announcement and demand are not a requisite where the facts make it evident the officers' purpose is known or where they would frustrate the arrest, increase the peril of the arresting officer or permit the destruction of evidence.

*Henson,* 236 Md. at 521–22, 204 A.2d 516.

After the Court of Appeals decided *Henson* in 1964, we held in *Waugh,* 3 Md.App. at 382, 239 A.2d 596, that,

.

[i]f the exigencies and practicalities of the situation demand entry without prior notice and demand, force may be used to break and enter under authority of a valid search warrant. Practicalities and exigencies in searches for narcotics require the element of surprise entry, for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry.

The final Maryland case to address this problem was *Kates v. State*, 13 Md.App. 688, 284 A.2d 651 (1971). The defendants were convicted of bookmaking. Officers, armed with a search warrant, entered the premises with a passkey obtained from the manager. One of the issues before us on appeal was whether the officers were required to give notice of their purpose and authority before forcibly entering the premises. *Id.* at 689–90, 284 A.2d 651. We stated:

While no evidence was adduced by the State to show that the officers, at the time of entry, knew of exigent circumstances which would permit an unannounced entry upon the suspected premises, appellants made no objection to the introduction of the seized items on this ground prior to their admission in evidence.

*Kates*, 13 Md.App. at 693, 284 A.2d 651. We did, however, state that

[i]t is well settled that the law proscribes such unannounced searches. This rule is not, however, without qualification or exception. As noted in *Henson v. State*, 236 Md. 518 [204 A.2d 516], an announcement and demand are not requisite where the facts made it evident that the officers' purpose is known or where such announcement and demand would likely frustrate the search, increase the peril of the searching officers, or permit the destruction of evidence. See also *Ker v. California*, 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726]; *Berigan v. State*, 2 Md.App. 666 [236 A.2d 743 (1968)]. We have held that narcotics cases may fall within the exception above noted "for if opportunity is given all evidence easily may be destroyed during the time required to

give notice, demand admittance and accept communication of denial of entry." *Waugh v. State,* 3 Md.App. 379 [239 A.2d 596], citing *Henson v. State, supra.* We think such a rationale equally applicable in gambling and/or lottery cases. See *United States [ex rel. Manduchi] v. Tracy,* 350 F.2d 658 (3rd Cir.[1965]).

*Kates,* 13 Md.App. at 693, 284 A.2d 651.

Therefore, the Supreme Court's decision in *Wilson* made explicit what the Maryland Courts had already assumed: that the knock and announce requirement is subject to exceptions.[5] The purpose of the knock and announce rule is to prevent violence and physical injury to the police and occupants and to protect an occupant's privacy expectation against the unauthorized entry of unknown persons. *See Ker,* 374 U.S. at 39, 83 S.Ct. at 1632–33. Maryland courts have not revisited the issue of no-knock warrants since *Kates, Waugh,* and *Henson.* Moreover, each of those cases involved narcotics and, therefore, at least a portion of the exigent circumstances excusing the knock and announce requirement was destruction of evidence. More recently, however, several other jurisdictions have examined the execution of no-knock warrants in cases involving a threat to the officers' safety due to the potential violence of the occupants of the premises to be searched. Therefore, for guidance in resolving the instant case, we will look to other jurisdictions which have examined excusing the knock and announce requirement on the basis of officer safety.

In *United States v. Perez,* 67 F.3d 1371 (9th Cir.1995), *reh'g granted,* 77 F.3d 1210 (1996), the police executed a no-knock warrant on a suspected heroin dealer. In holding that exigent circumstances existed to justify the failure of the police to knock and announce their presence, the United States Court of Appeals for the Ninth Circuit relied on knowledge pos-

---

5. The Supreme Court's decision in *Richards,* however, expressly disapproves of a *per se* exception to the knock and announce rule when executing a search warrant in a felony drug investigation. Thus, the Court of Appeals decision in *Henson,* which allows for a *per se* exception to the knock and announce requirement in drug cases, is in opposition with *Richards.*

sessed by the police that the occupant of the house: (1) was likely to be armed; (2) had a criminal record; (3) had shot and killed a suspected informant; and (4) was involved in the drug trade with another man who had an extensive, violent, criminal history, possessed firearms, and, if arrested, intended to "go down shooting." [6] *Id.* at 1384. The Court concluded:

> Given the circumstances surrounding the search of [the occupant]'s residence, it was reasonable for the officers to believe that the situation before them was dangerous. [The occupant]'s violent criminal history, and his close association with [the other man], who also had a violent reputation, could reasonably have led the officers to believe that [the occupant] was dangerous.

In *United States v. Murphy*, 69 F.3d 237 (8th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996), prior to the execution of the warrant, the police had the following information:

> [The occupant of the premises to be searched] sometimes carried a weapon, there were weapons in the house, [the occupant] had threatened to kill a Jew or blow up a synagogue that night. The officers were aware of [the occupant]'s violent past. They knew that [he] had shot a person following an argument, and that he was on parole from a second-degree murder conviction.

*Id.* at 243. There was also a concern for the safety of others because the house was located close to other houses. While acknowledging that a "reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient" to justify excusing the knock and announce requirement, *id.* (quoting *United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir.1993)), the court held that exigent circumstances existed to excuse the requirement when the law enforcement officers feared for their safety. *Murphy*, 69 F.3d at 243.

---

**6.** The court considered this factor despite the police's ignorance of whether the other man would be in the home during the execution of the warrant. *Perez,* 67 F.3d at 1384.

In *United States v. Maden,* 64 F.3d 1505, 1509–10 (10th Cir.1995), the Unites States Court of Appeals for the Tenth Circuit found exigent circumstances existed to excuse the knock and announce requirement when the occupant of the apartment to be searched was a wanted fugitive, was in the apartment with another wanted fugitive, had placed a murder contract on a local police detective, had a quantity of cocaine in the apartment, and the police had removed a loaded semi-automatic handgun from the occupant's hotel room eight months earlier.

In *Spivey v. Commonwealth of Virginia,* 23 Va.App. 715, 479 S.E.2d 543 (1997), a case which arose after the Supreme Court decided *Wilson,* the Virginia Court of Appeals found an exception to the unannounced entry of the officers:

> Here, a confidential and reliable informant had observed a recent drug sale at defendant's residence, an activity common to the premises, where defendant reputedly possessed a handgun. Defendant's son and drug supplier, Duane, resided nearby, was often at defendant's home and had been arrested two days previously for shooting into an unoccupied vehicle. When the warrant was executed Duane's whereabouts were unknown to the police. The officers were, therefore, cognizant that two firearms were possibly present in the residence, each in the possession of a drug dealer, one of whom had recently been charged with a weapons violation.

*Id.* at 723, 479 S.E.2d 543.

Other cases, however, have found that exigent circumstances were not present to justify the execution of a no-knock and announce warrant. In *United States v. Moore,* 91 F.3d 96, 99 (10th Cir.1996), officers were not excused for noncompliance of the knock and announce requirement despite the presence of firearms in the home "[b]ecause the government failed even to allege that the ... police officers harbored a concern for their safety...."

Similarly, in *United States v. Ramirez,* 91 F.3d 1297, 1302 (9th Cir.1996), the United States Court of Appeals for the

Ninth Circuit held that the knock and announce rules were violated when there was no danger that the occupant of the house would escape from a house surrounded by 45 officers, and there was no specific evidence that the occupant was armed, that he would use firearms against the officers, or that when faced with that show of force he would do anything violent at all.

*-standard of review-*

In reviewing the denial of a motion to suppress under Maryland Rule 4–252, we look only to the record of the suppression hearing and do not consider the record of the trial. *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987) (quoting *Jackson v. State,* 52 Md.App. 327, 332 n. 5, 449 A.2d 438 (1982)). *See also Gamble v. State,* 318 Md. 120, 125, 567 A.2d 95 (1989); *Herod v. State,* 311 Md. 288, 290, 534 A.2d 362 (1987). In considering the evidence presented at the suppression hearing, we extend great deference to the fact finding of the suppression hearing judge with respect to determining the credibility of the witnesses and to weighing and determining first-level facts. *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356 (1990). When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that those findings are clearly erroneous. *Riddick v. State* 319 Md. 180, 183, 571 A.2d 1239 (1990). But, as to the ultimate, conclusionary fact of whether a search was valid, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Perkins,* 83 Md.App. at 346, 574 A.2d 356.

*-present case-*

The police executed the search warrant for appellant's apartment as a no-knock warrant due to the following considerations: (1) appellant's 1985 handgun and burglary convictions; (2) when unlawfully resisting arrest in 1985, appellant reached in his jacket for a weapon and was shot by Montgomery County police officers; (3) he had a 1973 arrest of

possession of a controlled dangerous substance with intent to distribute; (4) he had prior convictions for possession of heroin, and (5) while investigating the crimes for which appellant was tried in the instant trials, police officers kept him under surveillance; on one occasion during the surveillance, the police approached him in an effort to speak to him, but appellant fled the scene. On the other hand, the police admittedly never saw appellant carry a weapon recently, but thought he may have been carrying a weapon based on his previous arrests.

Appellant's wife, Angela Kenyon, was also believed to be inside the home during the execution of the warrant; she had been, charged with armed robbery in 1989 and 1990 and had an outstanding violation of probation warrant. In addition to those charges, Kenyon had over 15 arrests, some including other armed robbery and theft charges, and drug convictions in 1981 and 1982.

In denying the Motion to Suppress, the trial court stated the following:

It is not the issue is there a more reasonable way to do things. This issue is is this reasonable what they did. I find—.

Here is what they knew. They knew not only did he have a conviction for possession of this gun, for carrying a gun; there was a[sic] acknowledgment that he carried it. There is an issue of staleness.

They knew much more than that. They knew that when he was confronted by a police officer he reached for the gun. That is in the warrant. He reached for the gun.

Here is somebody who is willing to use a weapon. And a police officer fired his weapon at this person because of the circumstances at that time. They knew that.

That is something that goes to somebody's—that would put a reasonable person in fear. This is not a case where we know he has guns at home or he was transporting a weapon improperly.

This is a case where somebody actually used a gun or reached for a gun that he actually had, he actually had that night, reached for it when an officer tried to stop him.

\* \* \*

I find that it was not unreasonable under—. That a reasonable officer in the position of these officers going in that day had a reasonable fear based on objective evidence which included the things in the application for search warrant that he had actually used a weapon in the past when he was tried to be arrested.
\* \* \*

Therefore, I am going to find that there was an objective basis for an objectively reasonable officer to break into this apartment without a knock and announce and I am not going to suppress the evidence.

■■■■ The reasonableness of the officers' conduct hinges on the facts within their knowledge indicating exigency, that is, whether the officers held an objectively reasonable belief that an emergency situation existed. *See United States v. Stewart,* 867 F.2d 581, 584 (10th Cir.1989). The State bears the burden of establishing that exigent circumstances excused its noncompliance with the knock and announce requirement. In the instant case, the determination becomes whether the officers' need for a no knock entry was demonstrated with reference to facts particular to their entry.

We agree with the trial court that sufficient particularized evidence existed to support the conclusion that the officers had an objectively reasonable belief that their personal safety was in danger because of appellant's and Kenyon's prior violent and criminal actions. While we recognize that a reasonable belief that firearms may be within the residence, standing alone, is clearly insufficient to excuse a knock and announce requirement, *see Murphy,* 69 F.3d at 243 (quoting *Marts,* 986 F.2d at 1218), additional facts created exigent circumstances in the instant case. Appellant had a long criminal background, including drug, assault, burglary, and

handgun convictions, was currently on parole, and, most importantly, had pulled a concealed weapon to resist arrest and flee from law enforcement in the past. That resulted in the police shooting at appellant, putting officers and bystanders in harm's way. Although the presence of a gun in a home is hardly unique in today's society, there is a reasonable basis for the police to conclude that the appellant would use a gun when confronted.

Moreover, appellant's wife, Angela Kenyon, was believed to be in the apartment at the time it was searched. As the United States Court of Appeals for the Ninth Circuit did in *Maden*, we believe the situation became significantly more dangerous for law enforcement officers with the suspected presence of another dangerous criminal. Kenyon had a long criminal record which included multiple charges of armed robbery and drug offenses. Additionally, she was wanted on an outstanding violation of probation warrant.

In short, we believe that appellant's criminal record and propensity for violent behavior in the past, coupled with his wife's past violent criminal activity and her fear of being picked up on the active warrant, were exigent circumstances in which the risk to the police officers' safety justified a no-knock entry into appellant's home.

## V.

Appellant next asserts that the trial court erred in failing to disclose the contents of a jury note sent to the judge during deliberations in the Garrison/Maples trial. We do not reach this issue as it is moot in light of our decision to remand this trial based on the trial court's erroneous joinder of the two cases.

## VI.

Appellant's final assertion of error is that the evidence was insufficient to sustain his convictions in both trials. There is sufficient evidence to convict when, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Dawson v. State*, 329 Md. 275, 281, 619 A.2d 111 (1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Appellate review is fashioned in such a way as to give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Barnhard v. State*, 86 Md.App. 518, 532, 587 A.2d 561 (1991) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789). We shall examine each trial separately to determine whether sufficient evidence existed to convict appellant.

### *Quigley Trial*

 Appellant readily acknowledges that unexplained, exclusive possession of recently stolen goods permits an inference that the possessor is the thief. *Grant v. State*, 318 Md. 672, 680, 569 A.2d 1237 (1990). He argues, however, that the items recovered from his house were not "recently stolen" because they were found in appellant's possession 10 months after the break-ins and thefts occurred. In *Gamble v. State*, 2 Md.App. 271, 275, 234 A.2d 158 (1967), we stated that:

> The requirement that goods be "recently" stolen is a relative one. In *Anglin v. State*, 1 Md.App. [85,] at 92 [227 A.2d 364] [ (1967) ], this court, quoting *Butz v. State*, 221 Md. 68, 77 [156 A.2d 423 (1959)], said:
>
>> The term "recent" when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with the circumstances of the case. (Citations omitted.)

In *Jordan v. State*, 24 Md.App. 267, 275, 330 A.2d 496 (1975), we had "no difficulty in holding the 10 month periods to be recent under the rule."

In the instant case, a gold Cartier watch, an Omega scuba diving watch, a Swatch watch, an imitation Rolex watch, other watches, as well as coins, jewelry, and a canvass Sierra bag were stolen from Quigley's home. The Cartier watch, Omega

scuba diving watch, the imitation Rolex watch, and the canvass Sierra bag were recovered from appellant's home. We believe that the number of items recovered, as well as the uniqueness of the items allow the inference that appellant stole the items even though they were recovered ten months later. Thus, we believe the goods were "recently stolen." A rational trier of fact could have reasonably concluded, as this jury did, that appellant's possession of these goods indicated that he had broken into the houses and stolen the items. We therefore affirm appellant's conviction for the daytime housebreaking of Quigley's home and theft of property.

### *Garrison/Maples Trial*

While we have already determined that the trial court improperly joined the charges of the break-ins and thefts from Garrison and Maples homes, we nonetheless address the issue of whether the evidence was sufficient to support the conviction because when the conviction is reversed due to insufficient evidence, double jeopardy precludes the defendant from being retried on the same charge. *Bacon v. State*, 322 Md. 140, 586 A.2d 18 (1991). Thus, if an appellate court determines that two or more charges were improperly joined, the remedy usually is a new trial; if an appellate court determines the evidence was insufficient to support appellant's convictions, however, the remedy is an outright reversal of the conviction without the possibility of appellant being retried.

In arguing that the evidence was insufficient to support his conviction in the Garrison/Maples trial, appellant again argues that the items recovered from his house were not "recently stolen" because they were found in his possession 10 months after the break-ins and thefts occurred. The argument is equally without merit in the Garrison/Maples case. A camcorder was stolen from Maples's home; the same camcorder [7] was found in appellant's possession. Two of the items stolen from Garrison's house included an antique watch and a

---

7. The police were able to determine that the camcorder was the same because the serial number was identical.

gym bag, both of which were recovered from appellant's house. For the reasons set forth in our analysis of the Quigley trial, a rational trier of fact could have reasonably concluded in the Garrison/Maples trial, as this jury did, that appellant's possession of the goods stolen from Garrison's and Maples's homes indicated that he had broken into the houses and stolen the items. Therefore, the evidence was sufficient to convict appellant in the Garrison/Maples case.

**JUDGMENT IN THE QUIGLEY TRIAL AFFIRMED; JUDGMENT IN THE GARRISON/MAPLES TRIAL REVERSED AND REMANDED FOR NEW TRIALS IN ACCORDANCE WITH THIS OPINION.**

**COSTS TO BE PAID ½ BY APPELLANT AND ½ BY MONTGOMERY COUNTY.**